Appeal No. 2017-1726

# United States Court of Appeals

*for the*

# Federal Circuit

TINNUS ENTERPRISES, LLC,

*Appellant,*

– v. –

TELEBRANDS CORPORATION,

*Appellee,*

JOSEPH MATAL, Performing the Functions & Duties
of Director of the US Patent & Trademark Ofc,

*Intervenor.*

ON APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE,
PATENT TRIAL AND APPEAL BOARD, IN CASE NO. PGR2015-00018

## BRIEF FOR APPELLEE

ROBERT T. MALDONADO
TONIA A. SAYOUR
ELANA ARAJ
COOPER & DUNHAM LLP
30 Rockefeller Plaza, 20th Floor
New York, New York 10112
(212) 278-0400

ERIC J. MAURER
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, D.C. 20005
(202) 274-1151

*Attorneys for Appellee*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Appellee Telebrands Corp. ("Telebrands"), certifies the following:

1.  The full name of every party represented by counsel of record is:

   a.  Telebrands Corp.

2.  The name of the real party in interest represented by counsel of record is:

   None.

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by counsel of record:

   None.

4.  The names of all law firms and the partners or associates that appeared for the parties now represented by counsel of record in the agency or are expected to appear in this Court are:

Robert T. Maldonado (Partner)          Eric J. Maurer (Partner)
Tonia A. Sayour (Partner)              Boies Schiller Flexner LLP
Elana B. Araj (Associate)
Cooper & Dunham LLP

Respectfully submitted,

COOPER & DUNHAM LLP

Dated:  August 29, 2017            By: /s/ Robert T. Maldonado
                                   Robert T. Maldonado
                                   Tonia A. Sayour
                                   Elana B. Araj
                                   30 Rockefeller Plaza
                                   New York, New York, 10112
                                   Tel.: (212) 278-0400
                                   Fax:  (212) 391-0525
                                   Email:rmaldonado@cooperdunham.com
                                        tsayour@cooperdunham.com
                                        earaj@cooperdunham.com

                                   Attorneys for Appellee
                                   Telebrands Corp.

# TABLE OF CONTENTS

I.   STATEMENT OF RELATED CASES ...............................................................1

II.  COUNTER-STATEMENT OF JURISDICTION................................................3

III.  COUNTER-STATEMENT OF THE ISSUES ..................................................4

IV.  COUNTER-STATEMENT OF THE CASE.......................................................5

   A.  Introduction ...............................................................................................5

   B.  The '066 Patent PGR Proceeding & District Court Litigation .......................6

   C.  The Different Standards, Records And Burdens of Proof Before The District Court And The Board With Respect To The '066 Patent ....................................10

V.   SUMMARY OF THE ARGUMENT...............................................................12

VI.  ARGUMENT .................................................................................................16

   A.  Tinnus Cannot Appeal The Board's Institution Decision.............................16

   B.  The Packard Standard Governs Indefiniteness in PGR Proceedings............18

      1.  The Court Should Apply A Deferential Standard Of Review ...................18

      2.  The Packard Indefiniteness Standard Is A Reasonable Exercise Of The USPTO's Authority ..................................................................................22

   C.  The '066 Patent Is Indefinite .......................................................................29

      1.  Standard of Review ...............................................................................29

      2.  Tinnus' Reliance on the Tinnus I Appeal Is Misplaced ............................31

      3.  The Board Correctly Determined That "Filled" Is Subjective ..................34

      4.  The Board Correctly Determined That Even If A POSA Understood "Substantially Filled" To Encompass a Range Of Fullness, The '066 Patent Is Still Indefinite ...............................................................................................48

      5.  The Board Correctly Determined That Use Of The Term "Substantially" Does Not Allow One Of Ordinary Skill In The Art To Understand What Is Claimed ..........................................................................................................53

   D.  Tinnus Waived Its Right To Challenge The Constitutionality of The Board's Final Written Decision Because It Did Not Raise The Issue With The Board....56

   E.  If the Court Reverses the Board's Finding Of Indefiniteness, the Case Should Be Remanded To The Board For Further Proceedings........................................58

VII.  CONCLUSION .............................................................................................59

# TABLE OF AUTHORITIES

*Abbott Labs. v. Andrx Pharms. Inc.,*
    473 F.3d 1196 (Fed. Cir. 2007) ........................................33

*Abbott Labs. v. Andrx Pharms.,* Inc.,
    452 F.3d 1331 (Fed. Cir. 2006) ........................................33

*Apple Inc. v. Samsung Elecs. Co.,*
    786 F.3d 983 (Fed. Cir. 2015) ..........................................54

*Aylus Networks, Inc. v. Apple, Inc.,*
    856 F.3d 1353 (Fed. Cir. 2017) ........................................25

*Beard v. General Services Administration,*
    801 F.2d 1318 (Fed. Cir. 1986) ........................................57

*Bicon, Inc. v. Straumann Co.,*
    441 F.3d 945 (Fed. Cir. 2006) ..........................................46

*Chevron, U.S.A., Inc.,*
    467 U.S. 837 (1984) ................................................ 18, 19

*Consolidated Edison Co. v. NLRB,*
    305 U.S. 197 (1938) ......................................................30

*Credit Acceptance Corp. v. Westlake Services,*
    859 F.3d 1044 (Fed. Cir. 2017) .................................. 26, 58

*Cuozzo Speed Tech., LLC v. Lee,*
    136 S.Ct. 2131 (2016) ............................................ passim

*Datamize, LLC v. Plumtree Software, Inc.,*
    417 F.3d 1342 (Fed.Cir. 2005) ........................................19

*Dow Chem. Co. v. Nova Chems. Corp. (Canada),*
    809 F.3d 1223 (Fed. Cir. 2015) ........................................29

*Dow Chemical Co. v. Nova Chemicals Corp. (Canada),*
    803 F.3d 620 (Fed. Cir. 2015) ..........................................51

*Ex Parte Innovative Automation LLC,*
    2015 WL 4038963 (P.T.A.B. June 20, 2015)....................23

*Ferguson Beauregardl Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*,
  350 F.3d 1327 (Fed.Cir. 2003) ................................................................38

*GE Lighting Solutions, LLC v. Lights of America, Inc.*,
  663 Fed.Appx. 938 (Fed. Cir. 2016) ........................................... 54, 55

*Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*,
  620 F.3d 1287 (Fed. Cir. 2010) .............................................................29

*Halliburton Energy Servs., Inc. v. M-I LLC*,
  514 F.3d 1244 (Fed. Cir. 2008) .............................................................51

*Hamilton Watch Co. v. Benrus Watch Co.*,
  206 F.2d 738 (2d Cir. 1953) ..................................................................33

*Husky Injection Molding Systems Ltd. v. Athena Automation Ltd.*,
  838 F.3d 1236(Fed. Cir. 2016) ..............................................................16

*In re Am. Acad. of Sci. Tech Ctr.*,
  367 F.3d 1359 (Fed. Cir. 2004) .............................................................52

*In re Baxter Intern, Inc.*,
  678 F.3d 1357 (Fed. Cir. 2012) .............................................................56

*In re DBC*,
  545 F.3d 1373 (Fed. Cir. 2008) ...................................................... 56, 57

*In re Hill-Rom, Inc.*
  634 Fed.Appx. 786 (Fed. Cir. 2015) .....................................................56

*In re Jolley*,
  308 F.3d 1317 (Fed. Cir. 2002) .............................................................30

*In re Packard*,
  751 F.3d 1307 (Fed.Cir. 2014) ..................................................... passim

*In re Schreiber*,
  128 F.3d 1473 (Fed. Cir. 1997) .............................................................57

*In re Watts*,
  354 F.3d 1362 (Fed. Cir. 2004) .............................................................56

*Interval Licensing LLC v. AOL, Inc.*,
 766 F.3d 1364 (Fed.Cir. 2014 ...................................................... 35, 55

*Invitrogen Corp. v. Clontech Laboratories, Inc.*,
 429 F.3d 1052 (Fed. Cir. 2005) ...................................................54

*Invitrogen Corp. v. Clontech Laboratories, Inc.*,
 No. 8:96-cv-04080-AW (D.Md. May 4, 2001) ...................................54

*MCM Portfolio LLC v. Hewlett-Packard Co.*,
 812 F.3d 1284 (Fed. Cir. 2015) .................................................. 5, 58

*Medrad, Inc. v. MRI Devices Corp.*,
 401 F.3d 1313 (Fed. Cir. 2005) ...................................................55

*Medtronic, Inc. v. Robert Bosch Healthcare Systems, Inc.*,
 839 F.3d 1382 (Fed. Cir. 2016) ...................................................17

*Merck & Cie v. Gnosis S.P.A.*,
 808 F.3d 829 (Fed.Cir. 2015) .............................................. 11, 13, 21

*NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*,
 531 U.S. 251 (1995) ...................................................................20

*Nautilus, Inc. v. Biosig Ins., Inc.*,
 134 S. Ct. 2120 (2014) ..................................................................7

*Novartis AG v. Noven Pharm., Inc.*,
 853 F.3d 1289 (Fed. Cir. 2017) ............................................. 6, 32, 33

*Oil States Energy Servs., LLC v. Greene's Energy Group, LLC*,
 2017 U.S. LEXIS 3727 (U.S. June 12, 2017) ...................................58

*Redline Detection, LLC v. Star Envirotech, Inc.*,
 811 F.3d 435 (Fed. Cir. 2015) .....................................................39

*Reno v. Koray*,
 515 U.S. 50 (1995) ............................................................... 18, 21

*Sage Prods., Inc. v. Devon Indus., Inc.*,
 126 F.3d 1420 (Fed. Cir. 1997) ....................................................39

*SightSound Tech., LLC v. Apple Inc.*,
   809 F.3d 1307 (Fed. Cir. 2015) ...........................................................16

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944) ............................................................................20

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   814 F.3d 1309 (Fed. Cir. 2012) ...........................................................29

*Telebrands Corp. v. Tinnus Enterprises, LLC*,
   PGR2016-00030, Paper 40 (P.T.A.B. June 5, 2017) ...........................58

*Telebrands Corp. v. Tinnus Enterprises, LLC*,
   PGR2016-00031, Paper 41 (P.T.A.B. June 5, 2017) ...........................58

*Teva Pharm. U.S.A., Inc. v. Sandoz, Inc.*,
   789 F.3d 1335 (Fed.Cir. 2015) ............................................................41

*Tinnus Enterprises, LLC v. Telebrands Corp.*,
   No. 6:15-CV-551-RC-JDL, 2017 WL 379471 (E.D. Tex. Jan. 24, 2017)...........10

*Tinnus Enters., LLC v. Telebrands Corp.*,
   846 F.3d 1190 (Fed. Cir. 2017) ................................................... passim

*Titan Tire Corp. v. Case New Holland, Inc.*,
   566 F.3d 1372 (Fed. Cir. 2009) ...........................................................32

*U.S. v. Mead Corp.*,
   533 U.S. 218 (2001) ..................................................................... 20, 21

*United Carbon Co. v. Binney & Smith Co.*,
   317 U.S. 228 (1942) ............................................................................44

*Univ. of Texas v. Camenisch*,
   451 U.S. 390 (1981) ............................................................................33

*Velander v. Garner*,
   348 F.3d 1359 (Fed. Cir. 2003) ...........................................................52

## Statutes

35 U.S.C. §321(b) ......................................................................................19

35 U.S.C. §326(a)(4) ........................................................................... 18, 19

**Other Authorities**

157 Cong. Rec. H4425 ........................................................................................22

**Rules**

M.P.E.P. § 2173.02 ................................................................... 23, 27

M.P.E.P. §2173.05(b) .............................................................................53

# I.    STATEMENT OF RELATED CASES

Appellee Telebrands Corp. ("Telebrands") is not aware of any other appeal in or from this post-grant review ("PGR") proceeding before the Patent Trial and Appeal Board ("Board") that was previously before this or any other court.

There are other cases that may potentially be affected by this Court's decision in this appeal. They are as follows:

1. In *Tinnus Enters., LLC, et al. v. Telebrands Corp. et al.*, 6:15-cv-00551-RC-JDL (E.D. Tex.) (*Tinnus I*), the plaintiffs—one of which is the Appellant in this current appeal—assert U.S. Patent No. 9,051,066, which is the patent at issue here. This Court already considered Telebrands' appeal of a preliminary injunction in *Tinnus I*, based on the '066 patent.  See *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190 (Fed. Cir. 2017).  *Tinnus I* is currently stayed pending this appeal.

2. In *Tinnus Enters., LLC, et al. v. Telebrands Corp. et al.*, 6:16-cv-00033-RWS-JDL (E.D. Tex.) ("*Tinnus II*"), the plaintiffs—who are the same as those in *Tinnus I*— assert U.S. Patent No. 9,242,749 and U.S. Patent No. 9,315,282, each of which are continuations of the '066 patent—the patent at issue in this appeal. Trial is set for November 13, 2017.

3. In *Tinnus Enters., LLC, et al. v. Wal-Mart Stores, Inc.*, et al., 6:16-cv-00034-RWS-JDL (E.D. Tex.) (the "*Retailer Action*"), the plaintiffs—who are the same as those in *Tinnus I*— assert the '749 and '282 patents against certain retailers. Trial is

set for November 13, 2017. The Retailer Action has been consolidated with *Zuru II*, listed immediately above.

4. In *Tinnus Enters., LLC, et al. v. Wal-Mart Stores, Inc.*, et al., 6:17-cv-00199-RWS-JDL (E.D. Tex.) (the "*Retailer II Action*"), the plaintiffs—one of which is the Appellant in this current appeal—assert the '066 patent against certain retailers. The *Retailer II Action* is currently stayed pending this appeal.

5. In *Tinnus Enters., LLC, et al. v. Telebrands Corp., et al.*, Nos. 17-1175, -1760, -1811 (Fed. Cir.), Telebrands and certain of its retailer customers appeal from preliminary injunction orders in the *Retailer Action* and *Tinnus II*.

6. In *Tinnus Enters., LLC, et al. v. Telebrands Corp., et al.*, No. 6:17-cv-00170-RWS-JDL (E.D. Tex.) ("*Tinnus III*"), the plaintiffs—who are the same as those in *Tinnus I*—assert the '749 patent, the '282 patent, U.S. Patent No. 9,533,779, and U.S. Patent No. 9,682,789, which are each continuations of the '066 patent—the patent at issue in this appeal—or of a child of the '066 patent. A preliminary injunction was entered in this action, which is currently on appeal before this Court (see below). A scheduling order has not been entered. Defendants Telebrands Corp. and Bulbhead.com LLC filed a motion to dismiss for improper venue based upon *TC Heartland*, and the parties are currently engaged in venue discovery.

7.  In *Tinnus Enters., LLC, et al. v. Telebrands Corp., et al.*, No. 17-2194 (Fed. Cir.), Telebrands and the other defendants in *Tinnus III* appeal from the preliminary injunction in *Tinnus III*.

8.  In *Zuru Ltd. v. Telebrands Corp.*, Civil Action No. 15-cv-00548-CCC-MF (D.N.J.), the parties assert multiple claims against each other, including Lanham Act, tortious interference and unfair competition claims pertaining to their respective balloon products, with some counterclaims being dependent on the validity of the '066 patent.

9.  In *Tinnus Enters., LLC v. Wal-Mart Stores, Inc.*, et al., 6:17-cv-00361-RWS-JDL (E.D. Tex.), Tinnus asserts the '749 patent, the '282 patent, the '779 patent, and the '789 patent, which are each continuations of the '066 patent—the patent at issue in this appeal—or of a child of the '066 patent, against three retailers.

10.  In *Telebrands Corp. v. Zuru Ltd.*, Civil Action No. 2:17-cv-04522-CCC-MF (D.N.J.), Telebrands seeks declaratory judgments that the Easy Einstein Balloons product does not infringe the '789 patent, which is a continuation of the '066 patent.

## II.     COUNTER-STATEMENT OF JURISDICTION

This appeal arises from a Final Written Decision of the Board dated December 30, 2016 in a PGR proceeding.  Although this Court has jurisdiction to consider timely-raised challenges to the Board's Final Written Decision, this Court lacks jurisdiction to review the Board's decision to institute the PGR at issue because that

decision is "final and nonappealable."  35 U.S.C. §324(e); *see also*, *Cuozzo Speed Tech., LLC v. Lee*, 136 S.Ct. 2131, 2141 (2016).

## III.   COUNTER-STATEMENT OF THE ISSUES

1.   Whether this Court lacks jurisdiction to review the Board's decision to institute this PGR proceeding.

2.   Whether this Court should affirm the Board's application of the indefiniteness test set in *In re Packard,* 751 F.3d 1307 (Fed.Cir. 2014).

3.   Whether the Board correctly determined that all claims of the '066 patent are indefinite under 35 U.S.C. §112(b), because the term "filled" is subjectively defined in the specification and dependent claim 6 of the '066 patent.

4.   Whether substantial evidence supports the Board's factual findings in support of its conclusion that all claims of the '066 patent are indefinite under 35 U.S.C. §112(b).

5.   Whether the Board correctly determined that all claims of the '066 patent are indefinite under 35 U.S.C. §112(b), because the '066 patent does not provide guidance for the term "substantially."

6.   Whether Tinnus is barred from raising a constitutional challenge to this PGR proceeding because it failed to raise the issue before the Board, and instead raised it for the first time in its opening brief; and if Tinnus is not so-barred, whether PGR

proceedings are constitutional in view of this Court's decision in *MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284 (Fed. Cir. 2015).

## IV.    COUNTER-STATEMENT OF THE CASE

### A. Introduction

This appeal is not about Mr. Malone's Bunch O Balloons product or any balloon product sold by Telebrands.  Tinnus' lengthy recitation of the parties' dispute is irrelevant to whether this Court should affirm the Board's Final Written Decision finding all claims of the '066 patent unpatentable as indefinite under 35 U.S.C. §112(b).  As explained below, the Board's Final Written Decision should be affirmed: the Board's finding was correct, it was supported by substantial evidence, and it was well-reasoned.

The Board determined that: (1) the standard for finding indefiniteness in a PGR proceeding is set forth in *Packard*, 751 F.3d at 1309; and (2) Telebrands proved by a preponderance of the evidence that the phrase "a connecting force not less than a weight of the container when substantially filled with water," is unclear, and therefore indefinite.

Tinnus cannot meet its burden of showing that the Board erred. Tellingly, instead of focusing on purported errors by the Board, Tinnus devotes much of its brief to this Court's decision in *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190 (Fed. Cir. 2017) ("*Tinnus I Appeal*"), in which this Court, under the highly

- 5 -

deferential plain error standard of review and a limited record, affirmed a preliminary injunction. Tinnus ignores that this Court did not have available the full record on which the Board based its Final Written Decision, and that this Court's decision was, by its nature, necessarily preliminary. In this regard, preliminary injunction decisions do not even bind the district court's ultimate decision on the merits. And even it was not a preliminary injunction decision, prior judicial opinions regarding patent validity are not binding on proceedings before the Board. *Novartis AG v. Noven Pharm., Inc.*, 853 F.3d 1289, 1293 (Fed. Cir. 2017).

When the full record of the PGR proceeding is considered, it is apparent that this Court should affirm the Board's Final Written Decision.

### B. The '066 Patent PGR Proceeding & District Court Litigation

U.S. Patent No. 9,051,066 ("the '066 patent"), entitled "System and Method For Filling Containers With Fluid," issued on June 9, 2015, to Tinnus Enterprises LLC. Appx0045. On the same day, Tinnus and Zuru Ltd. ("Zuru"), its exclusive licensee, sued Telebrands for patent infringement in the Eastern District of Texas (the *Tinnus I* Action). Appx0310. On June 18, 2016, Tinnus and Zuru moved for a preliminary injunction against Telebrands' Balloon Bonanza product. Appx0322, Appx0331.

On June 22, 2015, Telebrands petitioned for post-grant review ("PGR") with the Patent Trial and Appeal Board, asserting that all claims of the '066 patent were

indefinite under 35 U.S.C. § 112 and/or obvious under 35 U.S.C. § 103. *See e.g.,* Appx0152, Appx0177-0186. In support, Telebrands offered three expert declarations and 18 exhibits, including prior art references. Appx0172-0173.

In their preliminary injunction motion, Tinnus and Zuru did not address validity of the '066 patent. Appx0331-0334. In response, Telebrands argued that Tinnus and Zuru were unlikely to succeed on the merits due to invalidity, including that the claims were likely indefinite under *Nautilus, Inc. v. Biosig Ins., Inc.*, 134 S. Ct. 2120, 2123 (2014). Appx0383-0384 (citing to Appx0177-0184). In reply, Tinnus and Zuru simply argued that, by issuing the patent, the Examiner already determined that the claims were not indefinite, and that Telebrands allegedly had not explained why the Examiner erred. Appx0396, Appx0401-0402. Tinnus and Zuru did not argue, for example, what "substantially filled" means. *Id.* On September 11, 2015, the Magistrate Judge issued his report and recommendation ("R&R") granting the preliminary injunction. Appx0418. Telebrands objected to the R&R, but did not specifically object to the finding on indefiniteness. *See Tinnus I Appeal*, 846 F.3d at 1201. The district court thereafter entered the preliminary injunction, and Telebrands filed an appeal. Appx2021, Appx2039-2040.

Meanwhile, in the PTAB, on October 7, 2015, Tinnus submitted its preliminary response to the PGR Petition, and included the district court's R&R. Appx0239, Appx0245, Appx0309. On January 4, 2016, the Board issued its PGR

Institution Decision, finding that Telebrands met its burden of establishing, among other things, that the claims of the '066 patent are more likely than not indefinite.[1] Appx0723, Appx0733-0736, Appx0749.    The Board stated that, "[d]ue to the ambiguity in both how much volume a container holds when it is 'substantially filled' and how much 'shaking' the hollow tubes must be subjected to, a skilled artisan would be unable to determine whether a given apparatus does or does not have the shake-to-detach feature required by the claims." Appx0735.   Tinnus did not request rehearing, or otherwise challenge the PGR Institution Decision at that time.

On May 5, 2016, Tinnus filed the Patent Owner response, which did not challenge the constitutionality of the PGR proceedings, or argue that the Board erred by considering the term "filled" separately from "substantially."   *See* Appx0761-0764.   Tinnus included lengthy arguments and expert testimony—none of which was presented to the district court in connection with the preliminary injunction motion. *Compare* Appx0834-0848 with Appx0331-0334, Appx0400-0402.    Tinnus also relied on over 60 exhibits that were not before the district court when the preliminary injunction motion was decided.   Appx1964-1971.

---

[1] The Board also found that the claims were more likely than not invalid as obvious over the prior art combinations of Cooper, Saggio, and Lee and Cooper, Saggio, Lee and Berardi.   Appx0749.

Telebrands filed its reply brief on August 4, 2016 (Appx1243, Appx1274), oral argument was heard on September 23, 2016 (Appx1871-Appx1951), and the Board issued its Final Written Decision on December 30, 2016 (Appx0009-0044). The Board's Final Written Decision, which was issued pursuant to 35 U.S.C. § 328(a), found all challenged claims unpatentable as indefinite under 35 U.S.C. §112(b). Appx0011; Appx0042. Because the Board determined that all claims were unpatentable as indefinite, it exercised its discretion and declined to reach the obviousness issues. *Id.*

On January 24, 2017, this Court affirmed the grant of the district court's preliminary injunction. *Tinnus I Appeal*, 846 F.3d at 1190. In reviewing the indefiniteness of the claims, this Court applied the plain error standard of review, and held that "the district court's conclusion that Telebrands' indefiniteness argument failed to raise a substantial question of validity does not suffer from a 'clear or obvious' error." *Id.* at 1207. The Court stated that "[t]he [Board's Final Written] decision is not binding on this court, and ***based on the record before us and the applicable standard of review***, it does not persuade us that the district court abused its discretion in granting the preliminary injunction." *Tinnus I Appeal,* 846 F.3d at 1202, n.7 (emphasis added). As we discuss below, the record before the Board—including very significant admissions made by Tinnus during the trial

conducted by the Board—is very different from the record available to the Court in connection with the district court's preliminary injunction.

The same day that this Court issued its opinion on the appeal of the preliminary injunction motion, the district court in *Tinnus I* granted Telebrands' motion for stay pending this appeal. *Tinnus Enterprises, LLC v. Telebrands Corp.*, No. 6:15-CV-551-RC-JDL, 2017 WL 379471, at *1 (E.D. Tex. Jan. 24, 2017) ("*Tinnus I*"). In granting the stay, the district court rejected Tinnus' contention that the *Tinnus I Appeal* had determined validity of the '066 patent, explaining that:

> The Federal Circuit merely found that this court's conclusion that Defendants, at the preliminary injunction stage, had failed to raise a substantial question of validity based on indefiniteness was not reversible because it did not suffer from "clear or obvious error." January 24, 2017 Decision at p. 21.2 Because the Federal Circuit was reviewing a preliminary injunction decision for clear error and exercised a deferential standard of review, it did not—and was not required to—squarely address competing PTAB and district court indefiniteness standards or conduct a *de novo* review based on indefiniteness.

*Id.* at *2.

## C. The Different Standards, Records And Burdens of Proof Before The District Court And The Board With Respect To The '066 Patent

Tinnus is wrong that this Court addressed "the very same arguments" that were addressed by the Board. Br.8.[2] First, the district court applied the *Nautilus*

---

[2] "Br." as used herein refers to Appellant's Opening Brief file in this proceeding on June 22, 2017.

indefiniteness standard, whereas the Board applied the *Packard* standard. *Compare Tinnus I Appeal*, 846 F.3d at 1205 with Appx0024-0027. Second, Telebrands' burden of proof in the district court is clear and convincing, whereas its burden at the Board was preponderance of the evidence. *See Merck & Cie v. Gnosis S.P.A.*, 808 F.3d 829, 849 (Fed.Cir. 2015). Most important, the record before the district court was very different than the much more robust record before the Board. Indeed, the district court entered the preliminary injunction *before* the Patent Owner submitted its preliminary response and before the Board instituted the PGR proceeding. The record before the Board regarding indefiniteness included at least the following additional evidence and arguments:

- Patent Owner's Preliminary Response (Appx0239, Appx0272-0277);

- Patent Owner's Response (Appx0761, Appx0834-0848);

- All evidence relied upon by Patent Owner (Appx1964-1972);

- Petitioner's Reply (Appx1243, Appx1247-1254);

- Additional evidence on which Petitioner relied that was not submitted with the Petition (Appx1959-1963);

- The PGR Institution Decision (Appx0733-0736); Patent Owner's PGR Demonstratives, including the following explanation of "substantially filled" (Appx1796, Appx1848):



States of Being "substantially filled with water"

Paper 53, 6; Ex. 1019, 55:15-56:12

53

- The transcript of the oral argument at the PGR Trial, including Patent Owner's critical admissions (*See e.g.*, Appx1901:15-Appx1902:22; Appx1908:14-Appx1909:2; Appx1913:21-Appx1914:4; Appx1925:15-23).

## V. SUMMARY OF THE ARGUMENT

The Board correctly determined that Telebrands proved that all claims of the '066 patent are unpatentable as indefinite. Specifically, "a connecting force that is not less than the weight of one of the containers when substantially filled with water" is indefinite because there is no objective way to determine if and when a container is "substantially filled" with water.

This is the first post-grant review decision issued by the Board based on indefiniteness, 35 U.S.C. § 112. The Board correctly applied the *Packard* indefiniteness standard used in all other Patent Office proceedings, rather than the

*Nautilus* indefiniteness standard used in district court litigation, where patents are entitled to a presumption of validity and a resulting higher evidentiary standard for parties seeking to invalidate. *See Merck*, 808 F.3d at 840. In this post-grant review proceeding—where the task was determining whether the '066 patent correctly issued—the Board correctly applied the same standard for definiteness that the USPTO used in assessing the claims that issued in the '066 patent. The Board's decision to apply *Packard* to indefiniteness determinations in PGR proceedings is entitled to deference, both under the *Chevron* doctrine, and because the Board's decision to adopt this standard was a reasonable exercise of it rule-making authority. But, in any event, under either *Packard* or *Nautilus*, the claims of the '066 patent are indefinite.

The claims at issue relate to an apparatus for filling multiple containers with a fluid. Appx0055, claim 1. The containers are attached to hollow tubes by elastic fasteners, which have certain claimed functional properties. *Id.* The indefiniteness dispute at issue focuses on those functional properties of the elastic fastener. Specifically, in designing an apparatus according to the invention, the skilled artisan must configure the elastic fastener to have a connecting force that is not less than (i.e. greater than or equal to) the weight of the container *when the container is substantially filled with water. Id.* But that weight is indeterminable. Because the specification does not mention or define "substantially filled with water," —and

even Tinnus' expert in these proceedings has ascribed multiple, conflicting meanings to the term— it is indefinite. The intrinsic record is clear that the containers detach from the tubes when they are *filled* to a desired size and/or volume. Appx0054 at 3:48-49, 4:6-9, 4:60-63; Appx0055 at 43-46, claim 6. Because the term "filled" is entirely subjective, it is indefinite. In addition, while the modifier "substantially" is not *per se* indefinite, it is indefinite when it is not anchored to anything concrete. For example, if the patent defined "filled" as "8 ounces of water," then a skilled artisan might understand what "substantially filled" to mean "almost 8 ounces of water." Under those circumstances, "substantially filled" would not be indefinite. But here, no guidance is provided. To the contrary, the Board made the factual finding that "the level of water in a 'substantially filled' container is not ascertainable or measurable by reference to any objective standard." Appx0032. This finding is supported by substantial evidence, including testimony by both sides' experts, and establishes that the claims are indefinite. *See* Appx1110, Appx1207:6-22, Appx1275, Appx1310:16-Appx1313:14.

Tinnus' current argument that the meaning of "substantially filled" can be discerned from claim 1 alone is incorrect. According, to Tinnus, "substantially filled" means any amount of water such that the container releases upon shaking. Br.38. Tinnus did not advocate this construction before the Board and, in fact, disavowed it; and, in any event, but this interpretation is completely circular, and

renders the "substantially filled" claim language meaningless. Specifically, the only thing that matters under Tinnus' interpretation is *if* the container releases on shaking. *When* it releases is rendered irrelevant. It does not matter whether the release occurs when the container is almost empty and has very little water, or whether release does not occur until the container is so full of water it is near the point of bursting. But that is not what the claim says. It says release must occur *when* the containers are "substantially filled." While breadth does not automatically render a claim indefinite, interpreting "substantially filled with water" to mean "any amount of water," reads the limitation out of the claim. Specifically, release of a container with absolutely *any* amount of water in the balloon would satisfy the limitation under Tinnus' interpretation. That interpretation is the epitome of circular logic: shaking causes the containers to detach when they have sufficient water so that they detach when shaken. The claims are indefinite.

Tinnus' own demonstrative (Appx1848) shows multiple examples of a container being "substantially filled" over a wide range of fullness, thereby further underscoring the indefiniteness of the term. It makes clear that, under Tinnus's interpretation, the same device may or may not infringe, depending on how the user decides to use it, including the amount of water the user puts in the container and/or the amount of shaking that the user applies. This renders the claims indefinite.

Tinnus has shown no errors in the Board's decision. Even under *de novo* review, it is clear that the claims of the '066 patent are indefinite.

## VI.    ARGUMENT

### A. Tinnus Cannot Appeal The Board's Institution Decision

Ignoring well-settled law, Tinnus contends that this Court should reverse the Board's Final Written Decision due to a purported error during institution of this PGR proceeding. Br.19-23. But the applicable statute unequivocally states that the PTO's determination of whether to institute a PGR is "*final and unappealable.*" See 35 U.S.C. § 324(e) (emphasis added). Patent Owners have unsuccessfully challenged this provision—and the corresponding provision for IPR proceedings at 35 U.S.C. §314(d), which is nearly identical—on numerous occasions. Both this Court and the Supreme Court have repeatedly confirmed that the statute means what it says. *See Cuozzo Speed Tech, LLC v. Lee*, 136 S.Ct. 2131, 2142 (2016)(holding that PTO's discretion to resolve a question "closely related to th[e] decision to institute [an] inter partes review" is not subject to judicial review); *SightSound Tech., LLC v. Apple Inc.*, 809 F.3d 1307, 1314 (Fed. Cir. 2015) ("The reasoning of *Cuozzo* . . . applies not only to § 314(d) . . . but also to § 324(e)"); *see also, Husky Injection Molding Systems Ltd. v. Athena Automation Ltd.*, 838 F.3d 1236, 1247 (Fed. Cir. 2016) ("[W]e conclude that we lack jurisdiction to review the Board's determination on whether assignor estoppel precludes it from instituting *inter partes* review.");

*Medtronic, Inc. v. Robert Bosch Healthcare Systems, Inc.*, 839 F.3d 1382, 1384 (Fed. Cir. 2016) (concluding that the Board's decision on request to reconsider the institution of the IPR was a nonappealable decision). Tinnus tries to ignore this well-settled authority.

Even if Congress had not made institution decisions unappealable, Tinnus still loses. The Board's occasional use in the institution decision of the phrase "reasonable likelihood"—the standard for instituting IPR proceedings—is nowhere close to reversible legal error. *First,* the Board's Institution Decision made clear that the Board applied the correct standard under 35 U.S.C. §324(a), stating "it is *more likely than not* that Petitioner would prevail in showing that" all claims of the '066 patent are unpatentable.[3] Appx00724 (emphasis added). *Second*, the Board's Final Written Decision considered Tinnus' responsive evidence and found all claims unpatentable under the "preponderance of evidence" standard. Appx0011. In short, the alleged error cited by Tinnus is exactly the type of challenge that the Supreme Court foreclosed in *Cuozzo*. 136 S.Ct. at 2139-40 (explaining that the PTO's "power to revisit and revise earlier patent grants" would be undercut if "the agency's final decision could be unwound under some minor statutory technicality related to its preliminary decision to institute").

---

[3] If Tinnus believed the Board's institution decision was defective, it could have and should have requested a rehearing with the Board. It did not.

**B. The *Packard* Standard Governs Indefiniteness in PGR Proceedings**

Tinnus contends that the Board's decision to apply the indefiniteness standard in *Packard* is erroneous and that the proper standard should have been the standard in *Nautilus*. Tinnus' contentions are without merit.

### 1.    The Court Should Apply A Deferential Standard Of Review

Tinnus' incorrectly contends that the Board's decision to apply *Packard* should be reviewed without deference because the standard for indefiniteness is not included in a promulgated rule. Br.30. As explained below, there is no requirement that a rule be promulgated for *Chevron* deference to apply. But even if there were, the Supreme Court has held that even when *Chevron* deference does not apply, an agency's statutory interpretation should be accorded deference when it is "akin to an interpretative rule." *See Reno v. Koray*, 515 U.S. 50, 60-61 (1995). The Board's standard for determining indefiniteness is just that.

#### i.    The Board's Decision To Apply *Packard* Should Be Accorded *Chevron* Deference

As with IPR proceedings, Congress granted the USPTO authority to promulgate regulations regarding PGR proceedings. 35 U.S.C. §326(a)(4) ("the director shall apply regulations . . . establishing and governing a post-grant review under this chapter . . ."). In *Cuozzo*, the Supreme Court explained that the grant of such "rulemaking authority" is interpreted in light of its decision in *Chevron, U.S.A., Inc.*, 467 U.S. 837 (1984). *Id.* at 2142. That is, "where a statute leaves a 'gap' or is

'ambiguous' we typically interpret it as granting the agency leeway to enact rules that are reasonable in light of the text, nature, and purpose of the statute." *Id.* Here, as in *Cuozzo*, 35 U.S.C. §326(a)(4) leaves a "gap"; the Board's standard for determining indefiniteness governs PGR proceedings.[4]  As with claim construction, there must be a single standard applied by the Board in determining whether a claim is indefinite.  *See Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1348 (Fed.Cir. 2005) ("In the face of an allegation of indefiniteness, general principles of claim construction apply.").

In *Cuozzo*, the Supreme Court determined that the statute governing IPR proceedings left a "gap", and accorded *Chevron* deference to the Board's determination with respect to the standard for claim construction.  *Cuozzo*, 136 S.Ct. at 2142.  Deference resulted from Congress' granting the USPTO statutory authority to set rules and regulations in IPR proceedings, without directing the USPTO to use one claim construction standard over another.  *Id.*  The same reasoning applies here: 35 U.S.C. §326(a)(4) "expressly authorizes the Patent Office to engage in the process of rulemaking . . ." *Id.*  But there is no statutory provision that directs the USPTO to use one indefiniteness standard over another in PGR proceedings.  *Cuozzo*, 136 S.Ct. at 2142.  Accordingly, the Board's decision to apply *Packard* is subject to *Chevron* deference.

---

[4] A petitioner can raise indefiniteness as a ground for invalidity.  35 U.S.C. §321(b).

Citing *U.S. v. Mead Corp.*, 533 U.S. 218, 229-30 (2001), Tinnus contends that *Chevron* deference does not apply because, unlike the rule regarding claim construction for which there was a notice and comment period, the *Packard* standard for indefiniteness is not "an already promulgated rule." Br.30-31. Tinnus is wrong. *Chevron* deference is not limited to promulgated rules. Indeed, in *Mead,* the Supreme Court stated that *Chevron* deference applies "even when no such administrative formality was required and none was afforded." *Id.* at 231 (citing *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 531 U.S. 251 (1995) (holding that *Chevron* deference was proper in evaluating Comptroller of the Currency's interpretation of banking laws that it has the authority to enforce)). Here, the Board determined that the *Packard* standard is applicable to assessing indefiniteness in a post-grant review proceeding; that interpretation should be given deference.

> ii.  Even If *Chevron* Deference Were Not Applicable, The Board's Decision To Apply *Packard* Should Be Given Deference

Even if *Chevron* deference were inapplicable, this Court should still accord deference to the Board's standard for indefiniteness in view of the Supreme Court's holding in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), which set forth that an agency's interpretation of a statute should be accorded deference, "given the 'specialized experience and broader investigations and information' available to the agency." *Mead*, 533 U.S. at 234 (quoting *Skidmore*, 323 U.S. at 139). Indeed, it is

well-settled that deference should be accorded to reasonable agency interpretations, even when there is no notice and comment period and/or *Chevron* does not apply. *See Reno*, 515 U.S. at 60-61 (holding even though that an internal guideline set forth by an agency did not require a notice and comment, it was entitled to deference because it was "akin to an 'interpretive rule'" (internal citations omitted)).

As explained by Judge Plager in his concurring opinion in *Packard*, "[i]n my view (and that of the *per curiam* court), it is within the authority of the USPTO to so interpret the applicable standard. Further, it is my view that, as a policy matter, this court should support the USPTO in so doing." 751 F.3d at 1324. That the proceeding at hand is a PGR of an issued patent, and not a pre-issuance patent examination like that in *Packard* is irrelevant; *Cuozzo* made clear that a PGR proceeding is more similar to the patent examination process, and less like district court litigation. *Cuozzo*, 136 S.Ct. at 2145. Specifically, in district court proceedings, patents are entitled to a presumption of validity, whereas in PGR proceedings, they are not. *Merck*, 808 F.3d at 849. .

Accordingly, deference should be accorded to the Board's decision to adopt the *Packard* standard for indefiniteness in PGR proceedings.

### 2.    The *Packard* Indefiniteness Standard Is A Reasonable Exercise of the USPTO's Authority

The Board correctly determined that the standard set forth in *Packard*–whether the claims are "cast in clear—as opposed to ambiguous, vague, indefinite terms," *Packard*, 751 F.3d at 1313 – should apply to PGR proceedings.  The Board explained that *Packard* "sets a threshold for indefiniteness that demands at least as much clarity, and potentially more clarity, than the *Nautilus* definiteness requirement."  Appx0025.  The Board correctly reasoned that this definiteness requirement is proper in PGR proceedings based on (1) "the distinct roles that the PTO and the courts play in the patent system"; and (2) "the reasons . . . recognized by the Supreme Court in *Cuozzo* as supporting the use of the broadest reasonable interpretation standard in *inter partes* review AIA proceedings," namely protecting the public from ambiguous claims and the patent owner's fair opportunity to amend the claims in PGR proceedings.   Appx0026.

In *Cuozzo*, the Supreme Court recognized that the USPTO's post grant proceedings were for the purpose of reexamining the USPTO's earlier decision to issue the patent.   *Cuozzo*, 136 S.Ct. at 2144.   Indeed, the legislative history recognizes that one purpose of the AIA was to create "a new post-grant opposition system in which third parties can raise objections to a patent immediately after its issuance, which will both help screen out bad patents while bolstering valid ones." 157 CONG. REC. H4425 (daily ed. June 22, 2011) (statement of Rep. Goodlatte,

Chairman, Intellectual Property Subcomm. on the Judiciary).   Consistent with this announced purpose, the Board's Final Written Decision below recognized the distinction between the USPTO and District Court roles in reviewing patents post-issuance.  Appx0026.  Unlike the District Court, the Board must determine whether a patent correctly issued.  In making this determination, it is reasonable for the Board to use the indefiniteness standard set forth in *Packard*, i.e., the same standard that the Examiners use when determining whether to issue a patent in the first place.  *See* Appx0026.   Indeed, even after *Nautilus, Packard* is the same standard that Examiners use today in determining whether to issue a patent.  *See* M.P.E.P. § 2173.02 ("The Office does not interpret claims when examining patent applications in the same manner as the courts.  *In re Packard*, 751 F.3d 1307, 1312 (Fed. Cir. 2014).").  Likewise, the USPTO applies the same *Packard* indefiniteness standard in *Ex Parte* Reexamination proceedings.  *Ex Parte Innovative Automation LLC*, 2015 WL 4038963 (P.T.A.B. June 20, 2015). Given the Supreme Court's express acknowledgment in *Cuozzo* that IPR proceedings are akin to USPTO reexamination proceedings, the Board's determination to use the *Packard* indefiniteness standard in PGR proceedings is more than reasonable.  *Cuozzo*, 136 S.Ct. at 2145.

This Court's *Packard* decision, along with the Supreme Court's *Cuozzo* decision, further supports the Board's adoption of the *Packard* standard in PGR proceedings.  The *Packard* Court determined that it was appropriate for the USPTO

to use a different standard for indefiniteness than that applied by the district courts because, *inter alia*, during patent examination, unlike in the district court, the applicant has an opportunity to amend its claims. *Packard*, 751 F.3d at 1312-1313. Two years later, in *Cuozzo*, the Supreme Court made the same determination with respect to the standard for claim construction, namely, the USPTO could apply a different standard with respect to claim construction in IPR proceedings than in district court proceedings because, "the patent holder may, at least once in the process, make a motion to do just what he would do in the examination process, namely, amend or narrow the claim." *Cuozzo*, 136 F.3d at 2145. In its decision below, the Board correctly recognized that in PGR proceedings, as in patent examination and IPR proceedings, the Patent Owner has an opportunity to amend the claims.[5] Appx0026. Therefore, the Board's application of a different indefiniteness standard than that applied by the district court, is reasonable, and deference should be accorded.

Tinnus contends that the Board erred by applying *Packard* instead of *Nautilus* for five reasons: (1) *Nautilus* allegedly "would have supplanted *Packard*," (2) "the PGR proceeding below was a patent litigation not a patent examination," (3) "the broadest reasonable interpretation standard and ability to amend were not the bases

---

[5] The Board recognized that the Patent Owner had the opportunity to amend claims to address the indefinite issues raised in the Board's institution decision, but elected not to do so. Appx00039-0040.

for this Court's finding in *Packard*," (4) *Packard* allegedly "made clear that the significant reason for approving the USPTO's standard was not solely the ability to amend, but rather the "substantive interaction" between the applicant and the USPTO during examination,"; and (5) the Board's rejection of the *Nautilus* standard allegedly conflicts with two other CBM decisions. Br.25-31. Tinnus' contentions lack merit.

*First*, Tinnus is wrong that *Nautilus* supplanted *Packard; Nautilus* neither overruled nor replaced *Packard,* which remains authoritative. In *Packard*, this Court made clear that it was able to decide the standard that would be applied by the USPTO "without regard to the proper formulation of the *judicially-applied indefiniteness standard* that may be appropriate for post-issuance assessment of indefiniteness, a matter currently under review by the Supreme Court [in *Nautilus*]," a fact that Tinnus acknowledges. *Packard,* 751 F.3d at 1312-1313 (emphasis added); *see also* Br.26.

*Second*, Tinnus' characterization of the PGR proceedings as a "patent litigation" cannot be reconciled with the Supreme Court's *Cuozzo* decision, in which the Supreme Court determined that "inter partes review is *less like* a judicial proceeding and more like a specialized agency proceeding" in both procedure and purpose. *Cuozzo*, 136 S.Ct. at 2143 (emphasis added); *see also Aylus Networks, Inc. v. Apple, Inc.,* 856 F.3d 1353, 1360 (Fed. Cir. 2017) ("In *Cuozzo*, the Supreme Court

recognized that an IPR proceeding involves the reexamination of a patent."). The same is true for analogous PGR proceedings. *Credit Acceptance Corp. v. Westlake Services*, 859 F.3d 1044, 1053 (Fed. Cir. 2017) (applying "the reasoning and conclusions" of the previous IPR cases to PGR cases as well). Specifically, *Cuozzo* rejected the idea that IPRs are a "surrogate for court proceedings," explaining that:

> [I]nter partes review is less like a judicial proceeding and more like a specialized agency proceeding . . . challengers need not remain in the proceeding; rather, the Patent Office may continue to conduct an inter partes review even after the adverse party has settled. . . . Moreover, as is the case here, the Patent Office may intervene in a later *judicial* proceeding to defend its decision – even if private challengers drop out. And the burden of proof in inter partes review is different than in district courts: In inter partes review, the challenger (or the Patent Office) must establish unpatentability 'by a preponderance of the evidence'; in district court, a challenger must prove invalidity by 'clear and convincing evidence.'

*Cuozzo,* 136 S.Ct. at 2143-44. It further reasoned:

> Most importantly, these features, as well as inter partes review's predecessors, indicate *that the purpose of the proceeding is not quite the same as the purpose of the district court litigation.* The proceeding involves what used to be called a reexamination (and, as noted above, a cousin of inter partes review, ex parte reexamination . . .). The name and accompanying procedures suggest that the proceeding offers a second look at an earlier administrative grant of a patent. *Although Congress changed the name from 'reexamination' to 'review,' nothing convinces us that, in doing so, Congress wanted to change its basic purposes, namely, to reexamine an earlier agency decision.*

*Id.* at 2144 (emphasis added). The same rationale applies to the current PGR proceeding and demonstrates the Board's sound application of the *Cuozzo* decision.

Tinnus does not distinguish the Supreme Court's rationale in *Cuozzo* that reviews of patents post-issuance are *not* akin to district court litigation.

**Third**, the Board properly applied *Packard* to the PGR proceeding at issue here. Specifically, the Board concluded that, like examination proceedings, claims in AIA proceedings "are interpreted under the broadest reasonable interpretation standard, and an opportunity to amend the claims is afforded." Appx0025. Contrary to Tinnus' contention, *Packard* did mention the ability to amend, explaining that in the absence of a "satisfactory response" by the Applicant, i.e., "a modification of the language identified as unclear," the UPSTO can issue a rejection under 35 U.S.C. §112(b) for language in a claim that is "ambiguous, vague, incoherent, opaque or otherwise unclear in describing or defining the claimed invention." *Packard*, 751 F.3d at 1311. This "modification of the language" in the claim is a reference to *amending* claims. Moreover, while *Packard* may not have specifically mentioned the "broadest reasonable interpretation standard," it was used by the patent examiner as part of the indefiniteness determination during examination. In its Final Written Decision, the Board explained that M.P.E.P. §2173.02(I)[6] "advis[es] examiners that a rejection for indefiniteness is appropriate '*after applying the broadest reasonable*

---

[6] Patent examiners are required to follow the rules of examination set forth in the Manual of Patent Examining Procedure ("M.P.E.P.").

*interpretation to the claim*, if the metes and bounds of the claimed invention are not clear.'" Appx0024, n. 7 (emphasis added).

**Fourth**, Tinnus' contention that the Board erred in applying *Packard* to PGR proceedings because the "back-and-forth interaction that takes place during a patent examination . . . is quite different than the interaction in PGRs" misses the mark. Br.28. While interaction with *a patent examiner* does not exist in a PGR, a patent owner can "substantively" interact with the *Board*. Either way, there is interaction with the USPTO, and the Board acts like a "patent examiner" when examining claim amendments that were made during a PGR. Importantly, like pre-issuance examination, Tinnus was on notice that the Patent Office was "more likely than not" going to "reject," i.e., cancel, its claims as failing to meet the requirements of, *inter alia*, 35 U.S.C. §112(b) when it ordered institution. Tinnus then had the opportunity to ask the Board for leave to amend the claims and/or to persuasively argue why the claims at issue were clear, via a patent owner response. This is similar to the process than occurs during the initial examination of a patent, i.e. amendment of claim after rejection. Tinnus chose not to move to amend, and failed to convince the Board that the language at issue was clear. Tinnus cannot now reasonably complain that the Board's procedure for amending the claims during a PGR is allegedly insufficient to justify application of *Packard*. Moreover, Tinnus' contention that the patent owner has only one right to amend in a PGR was the same argument that the Supreme Court

rejected in *Cuozzo*.  *See Cuozzo*, 136 S.Ct. at 2145.    In short, Tinnus failed to demonstrate that the Board erred in applying *Packard* to the PGR proceedings here.

*Fifth*, the Board's application of the *Nautilus* standard in two CBM proceedings does not suggest that the Board made an error here.  Notably, nobody in either CBM proceeding ever argued that the correct standard for indefiniteness was *Packard*, instead of *Nautilus*.  Further, Tinnus has failed to demonstrate that the outcome of either CBM proceeding would have differed if it had applied *Packard.*

In view of the foregoing, this Court should affirm the Board's application of the *Packard* indefiniteness standard in PGR proceedings.  The Board's rationale in adopting such standard was reasonable and should be accorded deference.

### C.    The '066 Patent Is Indefinite

#### 1. Standard of Review

Indefiniteness is a question of law with underlying factual considerations.  *Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1299 (Fed. Cir. 2010); *see also Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 809 F.3d 1223, 1125 (Fed. Cir. 2015) (concurring opinion) (Indefiniteness "sometimes requires resolution of underlying questions of fact.").  This Court reviews "the Board's factual findings for substantial evidence and its legal conclusions *de novo*."  *Synopsys, Inc. v. Mentor Graphics Corp.*, 814 F.3d 1309, 1314 (Fed. Cir. 2012).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938).   Where "two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002).

Tinnus contends that the entirety of the Board's indefiniteness findings, including the factual findings, is subject to *de novo* review.  This is incorrect.  Here, the Board found that "claim 1 is indefinite on *several levels*," (Appx0027) (emphasis added), and set forth three distinct reasons for why the limitation, "a connecting force that is not less than a weight of one of the containers when substantially filled with water,"[7] is indefinite:

(1)  The term "filled" is subjective;

(2)  Even if a POSA understands the meaning of "substantially filled," the limitation is indefinite because the containers are expandable; and

(3)  The term "substantially" is not tethered to any objective standard.

---

[7]  Despite the Board's express statement that its indefiniteness determination is based on the indefiniteness of this limitation, as a whole, Appx0027, Tinnus' brief addresses only the terms "substantially" and "filled."

The Board's reasoning is based both on the intrinsic evidence and the Board's fact findings concerning the testimony of Tinnus's expert witness, Dr. Kudrowitz. Appx0031. For example, with respect to (1), the Board found that a POSA would not understand what "substantially filled" means, as evidenced by the inability of Dr. Kudrowitz, a POSA, to explain what it means.[8] *Id.* In addition, the Board found, as a factual matter, that: "the level of water in a 'substantially filled' container is not ascertainable or measurable by reference to any objective standard." Appx0032. This finding was based on the testimony of the parties' experts and was not based on the intrinsic record. Appx1110, Appx1207:6-22, Appx1275, Appx1310:16-Appx1313:14 As discussed below, substantial evidence supports all of the Board's fact findings.

## 2. Tinnus' Reliance on the *Tinnus I Appeal* Is Misplaced

At the outset, the underlying premise of each of Tinnus' contentions that this Court's *Tinnus I Appeal* already decided the issues currently on appeal (*see e.g.,* Br.35, Br.37, Br.39, Br.43) is fatally flawed. First, because of the different standards of review, the Board and this Court can properly arrive at different validity determinations:

> [E]ven if the record were the same, Novartis's argument would fail as a matter of law. The PTAB determined that a "petitioner in an inter

---

[8] This factual finding is further supported by the testimony of Telebrands' expert, Dr. Ken Kamrin. (Appx0113, Appx0124-0125, ¶¶55-60, Appx0136.)

> partes review proves unpatentability by a preponderance of the evidence (*see* 35 U.S.C. §316(e)) rather than by clear and convincing evidence[ ] as required in district court litigation," meaning that the PTAB may properly reach a different conclusion based on the same evidence.

*Novartis AG v. Noven Pharm. Inc.*, 853 F.3d 1289, 1294 (Fed.Cir. 2017). Similarly, in *Cuozzo*, the Supreme Court addressed the same issue, explaining that "inter partes review imposes a different burden of proof on the challenger. These different evidentiary burdens mean that the possibility of inconsistent results is inherent to Congress'[s] regulatory design." *Cuozzo*, 136 S.Ct. at 2146. The situation here is no different than the one already approved by both this Court and the Supreme Court; the evidentiary burden in a PI is not the same as that in PGR proceedings. In PGR proceedings, the burden of proof is "preponderance of the evidence." 35 U.S.C. 326(e). In contrast, the district court must determine whether to grant a PI in light of the "clear and convincing" evidentiary burden that the challenger bears at trial. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1379 (Fed. Cir. 2009).

Second, underlying decisions and standards of review in this appeal and the *Tinnus I Appeal* differ significantly. Here, the Court reviews the Board's unpatentability decision under the *de novo* and substantial evidence standards; while in *Tinnus I* the Court reviewed the district court's validity determination under a plain error standard. *See Tinnus I Appeal*, 846 F.3d at 1203.

Third, the *Tinnus I Appeal* was based on a completely different record than the record before the Board. See *Novartis*, 853 F.3d at 1294 (stating that "different records may lead to different findings and conclusions."). For example, the district court did not have available much of the evidence or argument considered by the Board in reaching its Final Written Decision. This evidence and argument included Tinnus' expert's declaration, the Patent Owner response, Telebrands' Reply brief, and the parties' oral argument and demonstratives, all of which were before the Board when it reached the Final Written Decision below. Appx0058-0059.

Fourth, this Court's *Tinnus I Appeal* decision did not resolve the ultimate question of invalidity and does not even bind the district court's trial on the merits. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *Abbott Labs. v. Andrx Pharms. Inc.,* 473 F.3d 1196, 1206 (Fed. Cir. 2007); *see also Abbott Labs. v. Andrx Pharms.,* Inc., 452 F.3d 1331, 1347 (Fed. Cir. 2006) (noting in its opinion reviewing a preliminary injunction that "our decision today in no way resolves the ultimate question of invalidity."); *see also Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 742 (2d Cir. 1953) ("For a preliminary injunction—as indicated by the numerous more or less synonymous adjectives used to label it—is, by its very nature, interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or final or conclusive, characterized by its for-the-time-beingness.").

Accordingly, Tinnus' efforts to transform the district court's "preliminary" determination and this Court's subsequent affirmance of it as the final word on invalidity of the '066 Patent should be rejected.

### 3. The Board Correctly Determined That "Filled" Is Subjective

The Board correctly determined that the limitation "elastic fastener configured to provide a connecting force that is not less than the weight of one of the containers when *substantially filled* with water" renders the claims indefinite. Appx0027-0033. At oral argument before the Board, the parties agreed that this limitation, which defines the claimed *strength* of the "elastic fastener," is not met merely because an elastic fastener is able to hold a container having *some amount of water* in place until it is shaken off. Rather, the "amount of water" in the container determines whether a container is "substantially filled." Appx1901:15-Appx1902:22; Appx1908:14-Appx1909:2; Appx1913:21-Appx1914:4; Appx1925:15-23.

The Board, therefore, correctly focused on the critical issue: trying to ascertain what the claims meant by "substantially filled." The Board correctly found that there was no objective definition.

    i. <u>Tinnus' Changing Definitions Demonstrate That "Filled" and "Substantially Filled" Are Subjective, Ambiguous And Unsupported By The Record Before The Board</u>

Tinnus' brief is conspicuous for its failure to offer a single proposed construction of "substantially filled," let alone one that "provide[s] *objective*

*boundaries* for those skilled in the art." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed.Cir. 2014) (emphasis added). It similarly avoided—and obfuscated—the issue during the PGR proceedings. Indeed, the Board stated, "in our Institution Decision, we informed Patent Owner of the significance of the absence of an objective standard, but Patent Owner did not identify persuasively any such standard in the Patent Owner Response." Appx0039-0040. Instead, Tinnus offered multiple, inconsistent definitions of "substantially filled"—many of which circularly use the word "filled," thereby confirming the indefinite nature of the terms.

First, in its October 2015 Preliminary Response, Tinnus took the position that "substantially filled" means "by and large holding as much as is *conveniently* contained." Appx0263-0265 (emphasis added). The Board correctly rejected this interpretation in the Institution Decision as not supported by the specification of the '066 patent and inconsistent with dependent claim 6. Appx0735-0736. Apparently recognizing the subjectivity inherent in this definition, Tinnus quickly veered in different directions, offering a smorgasbord of explanations:

(1) In its May 2016 Patent Owner Response, Tinnus offered no construction at all of "filled," and instead stated that "'filled' in the context of the claims is evident in the very experiential, plain and ordinary meaning of the word." Appx0838;

(2) In the Patent Owner Response, Tinnus also contended that "whether a container is substantially filled with water is *directly related to* the ability to shake and detach that container." Appx0836-0838;

(3) In the declaration accompanying the Patent Owner Response, Tinnus' expert suggested that "filled" means holding as much as can be contained, i.e., "[a] coffee mug containing coffee, to its brim, is filled with coffee," (Appx1046, Appx1058, ¶¶30-31, Appx1089), and that "substantially filled" means "approximately" that amount (Appx1058, ¶32);

(4) During cross-examination, Tinnus' expert testified that a balloon is "approximately filled" (i.e., "substantially filled") with water from "shortly before it starts expanding" until it bursts. Appx1310:4-Appx1313:25;

(5) At the trial, Tinnus contended that the ordinary meaning of "filled" is "completely filled." Appx1906:19-20; and

(6) At the trial, Tinnus also said that "filled" as applied to an elastic container does not mean that the container is filled to its bursting point. Appx1907:12-24). Instead, it is a state in which no more fluid could be placed into the container, and an elastic container filled to its bursting point represents only one such state. Appx1907:12-Appx1909:2;

(7)  Tinnus also used a demonstrative exhibit, reproduced below, illustrating the different states in which an expandable container is "substantially filled" with water. Appx1848.



Paper 53, 6; Ex. 1019, 55:15–56:12

53

Tinnus' various explanations cannot be reconciled. A container filled with as much water as "conveniently contained" is not the same thing as a container that is "approximately filled" with water.  In addition, a container that is "completely filled" with water is not the same thing as containers that are in varying states of fullness, such as those shown above in Tinnus' demonstrative.  Tinnus' inconsistent attempts to define "filled" and "substantially filled"—based on the testimony of its expert, who is a POSA—make clear that no matter how one slices it, determining whether a container is "filled" or "substantially filled" is a hopeless exercise that is entirely contingent on a user's subjective desire.

ii.   The Intrinsic Record Subjectively Defines "Filled"

In the decision below, the Board identified *five* instances in the '066 patent, including the specification and dependent claim 6, in which the term "filled" is subjectively defined as a *desired* size of and/or volume in the container.  Appx0028, Appx0031.  Indeed, Tinnus *admits* that the specification repeatedly uses "filled" to describe "'desired size' or 'desired volume,'" but tries to brush them aside as "coinciden[ces]." Br.35. But when a term is consistently used in the specification it is not a "coincidence," but rather, an authoritative indication of the definition of such terms.  *See, e.g., Ferguson Beauregardl Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1338 (Fed.Cir. 2003) ("It is the use of the words in the context of the written description . . . that accurately reflects both the 'ordinary' and 'customary meaning' of the terms in the claims of a patent").  This is particularly true where Tinnus can point to *nothing* in the specification that provides a definition for "filled" that allegedly is not dependent on a "desired size" or "desired volume."

Tinnus additionally contends that the portions of the specification on which the Board relies do not define "filled." Br.35.  Tinnus' argument is inconsistent with its own expert's reliance on this same disclosure as identified by the Board as supporting the conclusion that a POSA would understand the meaning of "substantially filled." Appx1058, ¶33; Appx1060-1061, ¶45.  Indeed, Tinnus' expert explained that "the phrase 'substantially filled with water' is used to define the

strength of the elastic fastener." Appx1058, ¶33. Then, citing to the *same* portion of the specification identified by the Board, Tinnus' expert stated that a POSA would understand that containers are "substantially filled with water" when they "have reached a desired size and/or they are filled with the desired volume of fluid, they may be removed from tubes." Appx1060-1061, ¶45. Throughout the specification, the patent states that the containers may be detached from the tubes when they have reached a desired size and/or volume. Appx0054 at 3:48-49, 4:6-9, 4:50-53; Appx0055 at 5:43-46. A "desired size and/or volume" may encompass a broad range—from empty to completely filled—with "substantially filled" lying towards the upper end of that spectrum. But the amount of water in a "substantially filled" container in indeterminable.

Finally, Tinnus contends that the Board erred in determining that "filled" is subjective because the Board's "piecemeal approach by breaking up the claim term 'substantially filled' into subparts" was allegedly inappropriate. Br.34, Br.36. As an initial matter, Tinnus cites no authority for this argument. *Id.* Furthermore, Tinnus is precluded from raising this argument for the first time on appeal. *Redline Detection, LLC v. Star Envirotech, Inc.,* 811 F.3d 435, 450 (Fed. Cir. 2015) (Any argument "not presented to the [PTAB]" is "waived"); *see also Sage Prods., Inc. v. Devon Indus., Inc.,* 126 F.3d 1420, 1426, (Fed. Cir. 1997). Telebrands' Petition unambiguously argued that the term "filled," by itself, is indefinite, without regard

- 39 -

for its modification by the term "substantially." Appx0178-0182. In its institution decision, the Board agreed with Telebrands, finding the term "filled" more likely than not indefinite. Appx0731-0736. Despite this, Tinnus did not raise its "piecemeal" argument previously.

Even if this Court were to consider Tinnus' piecemeal approach argument on the merits, it fails. Tinnus admits that "substantially" means "approximately." *See* Appx1058, ¶32. As discussed below, the modifier "substantially" is definite only if it is anchored to an objectively measurable parameter. In this instance, the modified word is "filled." Because the word "filled" is indefinite, the phrase "substantially filled" is also indefinite. Specifically, the phrase "substantially filled" can only be definite if "filled" is objectively measurable. The Board found, as a factual matter, that it is not.

In view of the foregoing, this Court should affirm the Board's final written decision, as the Board correctly determined that "filled" is subjective, based on the definition of "filled" set forth in the intrinsic record.

iii.  Substantial Evidence Supports The Board's Factual Finding With Respect To "Filled"

In addition to being supported by the intrinsic record, the Board's determination that the term "filled" is indefinite is based on its subsidiary factual finding that "the level of water in a 'substantially filled' container is not ascertainable or measurable by reference to any objective standard." Appx0032. There is

substantial evidence in the record to support this finding.  For example, Telebrands' expert, Dr. Kamrin explained that, apart from the '066 patent, there is no objective standard for determining when an expandable container, such as a balloon, is substantially filled.  Appx1207:6-22.  This is because, as a balloon is being filled with a fluid, it does not have a fixed volume—the volume changes as the balloon expands.  *Id.*  Because the volume of an expandable container is changes during filling, there is no objective reference point for determining when that container has reached a point when it is filled or substantially filled.  *Id.*

In addition, Tinnus' expert, Dr. Kudrowitz also testified regarding the meaning of "substantially filled" with respect to expandable containers.  When asked how one would determine when a balloon is not substantially filled with water, Dr. Kudrowitz stated, "[f]or example, when it's halfway full of water, it's not approximately full of water."   Appx1310:16-Appx1313:25.  Dr. Kudrowitz's testimony, like that of Dr. Kamrin, was grounded in his general understanding of expandable containers, irrespective of the intrinsic record.  *Id.*  Accordingly, the Board correctly determined that the level of water in a "substantially filled" expandable container is not ascertainable or measurable with respect to any objective standard, and that determination should be accorded deference.  *See Teva Pharm. U.S.A., Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341-42 (Fed.Cir. 2015) (holding that

the district court's determination about how a POSA would understand a term, separate and apart from the patent, is a question of fact, entitled to deference).

### iv. "Substantially Filled" Cannot Mean When The Container Detaches Upon Shaking

Citing to this Court's preliminary conclusion—based on a plain error standard of review and a different record—that "if the balloons detach after shaking, then they are 'substantially filled,'" (Br.37)—Tinnus now advocates for a construction of "substantially filled" that it explicitly disavowed during the PGR proceedings. Specifically, at trial, when the Board inquired whether Tinnus was arguing that a container is substantially filled because it can be shaken off, Tinnus emphatically responded "[t]hat's not the argument we make. Absolutely not." Appx1925:15-23 (responding to Appx1891:10-23); *see also* Appx1901:15-Appx1902:22; Appx1908:14-Appx:2; Appx1913:21-Appx1914:4. During trial before the Board, Tinnus repeatedly argued that the "substantially filled" limitation is *not* met because the container releases when shaken. *Id.*

Tinnus disavowed this construction at trial because the record before the Board did not support it. Claim 1 does recite that the "elastic fastener" must have a "connecting force" and that "shaking the hollow tubes in a state in which the containers are substantially filled with water overcomes the connecting force and causes the containers to detach from the hollow tubes," but it also requires that:

> each elastic fastener [be] configured to provide a ***connecting force*** that is not less than a weight of one of the containers when ***substantially filled*** with water ….

Appx0055 at 6:41-44 (emphasis added).  Plainly, the "connecting force" must be *strong enough* to hold containers in a *particular state* of fullness: "when [one of the containers is] substantially filled with water."  Indeed, as the Board pointed out at trial, (Appx1926:11-1927:12), application claim 26 included a similar limitation, requiring "a connecting force not less than a weight equivalent to one of the balloons if substantially filled with water…."  Appx0538-0539.  In response to an examiner rejection arguing that it is inherent that a water balloon will cling to a nozzle with "a small volume of water" and can be shaken off, Tinnus argued that the "connecting force" cannot be "less than a particular weight"—i.e., equivalent to when "substantially filled with water."   Appx0502-0503, Appx0538-0539.[9]   Tinnus thereby admitted that "substantially filled" cannot mean "a small volume of water." *Id.*

---

[9]  The Examiner's statement in the Notice of Allowability, that "the language of claim 1 beginning with 'such that shaking …' defines the upper limit of the connecting force," (Appx0593-0594) provides no objective boundary for "substantially filled."  In any event, the test for indefiniteness is not whether the Examiner had an unarticulated meaning in mind. If it were, no patent would ever be subject to an indefiniteness challenge.   Indeed, when questioned about the Examiner's interpretation of the shake-to-detach feature, Tinnus' own expert admitted: "I don't know what the Examiner was thinking."   Appx1321,:1-Appx1323:21.

Tinnus' attempt to read out the "substantially filled" limitation so that the connecting force can be linked to a container with *any* weight of water—*i.e.*, if you can shake them off, they must be "substantially filled"—must fail. It is well-settled that every term in a claim must be given meaning. *United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228 (1942). By defining "substantially filled" by shaking, Tinnus renders the term "substantially filled" superfluous, and having no meaning. This is because, under Tinnus' interpretation, regardless of how much water is in the containers, if you can shake them off, they are "substantially filled." The amount of water in the containers does not matter. This position is contrary to positions that Tinnus has taken during prosecution, as discussed above. *See* Appx0538-0539. In addition, considering Tinnus' demonstrative (Appx1848 -below), if a container held less water than that shown at Point (A)—a state that nobody (even Tinnus)[10] would consider to be "substantially filled" with water—but the container could be shaken off the tube, under Tinnus' construction, it would be considered "substantially filled with water." Indeed, the phrase "substantially filled with water" can be replaced with "filled with any amount of water," and the result will be the same. Thus, Tinnus' interpretation would render "substantially filled" meaningless.

---

[10] In one of its interpretations, Tinnus claims that "substantially filled" begins just prior to expansion of the balloon, i.e. at Point A. Appx1412:2-23.



States of Being "substantially filled with water"

Paper 53, 6; Ex. 1019, 55:15-56:12

53

Defining "substantially filled with water" by the amount of shaking is further foreclosed by the limitation in claim 1 that "each elastic fastener [is] configured to provide a connecting force that is ***not less than a weight*** of one of the containers ***when substantially filled with water***…"   A skilled artisan designing an apparatus that avoids the boundaries of claim 1, would configure her elastic fastener to have a certain strength (A), and that strength is defined by a specific numerical value, i.e. the weight of a container that is substantially filled with water (B).   In simple algebraic terms, A ≥ B.  If the value of B is unknown, then the value of A cannot be ascertained.   Appx1880:20-Appx1881:5.   Put another way, assume in Tinnus' demonstrative (Appx1848) that point (C) is "filled" (the point just before bursting) and point (B) is "substantially filled."  Let's say that the artisan wants to design her elastic fastener so that the container will detach upon shaking only if it is "filled"

- 45 -

with water (at point (C)), but not if it is just "substantially filled" with water (at point (B)). According to Tinnus' new argument on appeal, "substantially filled" has no quantitative meaning—as long as the balloon detaches upon shaking, it is "substantially filled with water" no matter how much water it contains. This is plainly incorrect, and would render the phrase "substantially filled" meaningless.

In fact, Tinnus' newly-proposed definition has nothing to do with when a container is "filled" or "substantially filled." For example, an apparatus may be designed with balloons that can hold 8 oz. of water before bursting. Those balloons, however, may detach from their respective tubes upon shaking when they have only 2 oz. of water.[11] If "substantially filled" means enough water so that the balloon detaches upon shaking, then, according to Tinnus, when the balloons in this example are filled to just 1/4 of their capacity, they are "substantially filled with water." In other words, "substantially filled" simply means *any amount* of water, which improperly renders the term "substantially filled" with water superfluous. *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) (To avoid claim "language [that] is merely superfluous . . . claims are interpreted with an eye toward giving effect to all terms in the claim.").

---

[11] The parties and Board agree that shaking means "applying an acceleration." Appx0017. The magnitude of the acceleration is undefined.

That "substantially filled" is rendered superfluous when defined by the limitations claim 1, is further evidenced by the circularity of claim 1. To illustrate, if "substantially filled" means "an amount of water such that the container detaches by shaking," then claim 1 would read as follows:

> "each elastic fastener configured to provide a ***connecting force*** that is not less than a weight of one of the containers when ***an amount of water [is] such that the container detaches by shaking***, . . ., such that ***shaking*** the hollow tubes in a state in which the containers have ***an amount of water such that the container detaches by shaking*** overcomes the ***connecting force*** and causes the containers to detach from the hollow tubes"

Indeed, as illustrated above, the value of the connecting force is dependent on the amount of water in the container, which is defined by the amount of shaking; and the amount of shaking is dependent on the amount of water in the container and the value of the connecting force. The argument is completely circular.



Appx1973, Appx1989. The shaking limitation is particularly perplexing. As demonstrated above, the claim recites that the containers release upon shaking when they have a certain amount of water, i.e. when they are substantially filled with

water.  But if the amount of water is defined by the ability to release upon shaking, then the shaking limitation is reduced to:

> ***shaking causes the containers to detach when the containers have enough water in them so that they detach when shaken.***

This interpretation is circular and illogical. Accordingly, contrary to Tinnus' contentions, sufficient meaning for "substantially filled" is ***not*** found in claim 1 of the '066 patent.

### 4. The Board Correctly Determined That Even If A POSA Understood "Substantially Filled" To Encompass a Range Of Fullness, The '066 Patent Is Still Indefinite

Tinnus misunderstands the Board's decision with respect to its analysis of "expandable containers."  Contrary to Tinnus' contention, the Board's subjectivity determination with respect to "filled" was *not* the basis for the rest of the Board's findings.  Br.37.  Rather, the Board correctly concluded that even "assuming that a person of ordinary skill in the art would understand that a balloon or expandable container is 'substantially filled with water' *over a range of expansion*, as Patent Owner contends, the phrase 'not less than a weight of one of the containers when substantially filled with water' is nevertheless, unclear and indefinite."  Appx0035-0036 (emphasis added).

*First*, Tinnus offered a new argument at trial (based on its expert's deposition) that an expandable container,[12] e.g., a balloon, is "substantially filled water" from just prior to the time it begins to expand until it bursts.  Appx0034; Appx1920:6-Appx1922:20.  Addressing this new proposal—and using Tinnus' own demonstrative showing three "substantially filled" states—the Board determined that:

> In state (C), just before bursting, the balloon or elastic fastener might not be strong enough to perform the required attachment and sealing functions due to the weight of the water in the container.  At a lower level of expansion, however, in state (B), the same elastic fastener might be strong enough to provide 'a connecting force that is not less than a weight of one of the containers when substantially filled with water,' as claim 1 requires.  As such, *the same physical structure (including the elastic fastener)* could meet the claims requirements in state (B), when the expandable container is substantially filled with water, but not in state (C), when the expandable container is *also* substantially filled with water.

Appx0036 (emphasis-in-original).

---

[12] There was no disagreement that the containers recited in the claims of the '066 patent include expandable containers.



**Appx34 (citing Tinnus demonstrative)**

Tinnus complains that the Board "speculated what 'might' happen with the hypotheticals it generated and without the benefit of a POSA."  Br.45.  But earlier in its brief, Tinnus admitted that:

> Based on the plain reading of the claim, Dr. Kudrowitz testified that a POSA would understand there was a definitive point at which there would be too much water such that the containers would detach without shaking, *thereby not practicing the claim.*

Br.38 (emphasis added).

This is the precise scenario addressed by the Board:  the balloon is filled with sufficient water (but not enough to burst) that the "elastic fastener" is unable to hold it on the tubes.[13]  Tinnus admits in its brief that this system does not "practice[e] the

---

[13]  The record before the Board shows that a POSA would understand that, according to the basic laws of physics, as the balloon fills with water, its weight increases, and at some point, it will be so heavy that it will fall off the tube; while balloons that are less heavy may stay attached.  Appx0130-0131, ¶84.  Similarly, expert testimony

claim." Br.38.  Yet prior to the "definitive point at which there would be too much water," (*id.*), the same "elastic fastener" was able to hold the balloon in place—and hence presumably would practice the claim.  Tinnus' own admission supports the Board's conclusion that the ***same*** elastic fastener could be strong enough in one situation and not strong enough in another situation, depending on the weight of the water in the container.  This is the epitome of indefiniteness.  *See e.g., Halliburton Energy Servs., Inc. v. M-I LLC,* 514 F.3d 1244, 1254-55 (Fed. Cir. 2008) ("When a proposed construction requires that an artisan make a separate infringement determination for every set of circumstances in which the [invention] may be used, and when such determinations are likely to result in differing outcomes (sometimes infringing and sometimes not), that construction is likely to be indefinite"); *see also Dow Chemical Co. v. Nova Chemicals Corp.,* 803 F.3d 620, 634-635 (Fed. Cir. 2015) (finding a chemical composition claim to be indefinite because the claims, specifications, and prosecution history failed to indicate which method should be used to calculate a given claim term, leaving "whether or not a given product infringes the claims" dependent on the "unpredictable vagaries of any one person's opinion" (citation omitted)).

---

established that a POSA knows that, for balloons that stay attached, increasing the "effective value of gravity" by shaking the apparatus harder and harder causes the balloon to detach.  Appx0130-1031, ¶¶84-90.

Tinnus' other responses are misdirections. It misquotes the Board as stating that "the balloon might not be strong enough to perform the required attachment and sealing functions" (Br.45), to argue that the Board failed to explain why the "container would be performing that function instead of the claimed 'elastic fastener.'" (Br.46.) But the actual quote from the Board was that "the balloon or *elastic fastener* might not be strong enough to perform the required attachment and sealing functions …." Appx0036 (emphasis added). Similarly, Tinnus criticizes the Board's use of the phrase, "required attachment," incorrectly arguing that there is no "attachment" required by claim 1. Br.46. But claim 1 unequivocally recites containers "removably attached" to tubes, and elastic fasteners clamping (i.e. attaching) the containers to the tubes. Appx0055, claim 1.

Furthermore, Tinnus complains that the Board "completely discredit[ed]" Dr. Kudrowitz's testimony as "conclusory and unpersuasive." Br.44. But it is within the Board's discretion to weigh expert testimony and give such testimony the weight it deems appropriate. *Velander v. Garner*, 348 F.3d 1359, 1371 (Fed. Cir. 2003) ("[W]hat the [Board] consistently did was accord little weight to broad conclusory statements that it determined were unsupported by corroborating references. It is within the discretion of the trier of fact to give each item of evidence such weight as it feels appropriate." (citation omitted)); s*ee also In re Am. Acad. of Sci. Tech Ctr.,* 367 F.3d 1359, 1368 (Fed. Cir. 2004) ("[T]he [Board] is entitled to weigh the

declarations and conclude that the lack of factual corroboration warrants discounting the opinions expressed in the declarations . . . ." (citations omitted)).    Dr. Kudrowitz's declaration contained nothing more than bald assertions that lack evidentiary support, which the Board did not "ignore," but properly discredited.  *Id.*

Accordingly, the Board correctly determined that the phrase "a connecting force not less than a weight of one of the containers when substantially filled with water" is indefinite.

### 5. The Board Correctly Determined That Use Of The Term "Substantially" Does Not Allow One Of Ordinary Skill In The Art To Understand What Is Claimed

It is well-settled that "[w]hen a term of degree is used in the claim, the [PTO] should determine whether the specification provides some standard for measuring that degree."  M.P.E.P. §2173.05(b).  That is exactly what the Board has done here. As correctly explained by the Board in its decision below, "the term 'substantially filled' does not appear in the specification."  Appx0040.  Indeed, the Board noted that "Patent Owner does not, however, direct us to any guidance in the claims or the Specification that would explain how much deviation from a completely filled container the term 'substantially filled' allows."[14]  *Id.*  Consistent with the Board's

---

[14] Tinnus' opening brief is equally unhelpful. Tinnus simply repeats the same argument that the Board properly rejected, namely, that "relative terms and words of degree do not render patent claims invalid."  Br.39.  True enough. But Petitioner

analysis, this Court has held that the term "substantially" is indefinite when untethered to any objective standard. *See Invitrogen Corp. v. Clontech Laboratories, Inc.*, 429 F.3d 1052, 1074 (Fed. Cir. 2005) (citing *Invitrogen Corp. v. Clontech Laboratories, Inc.*, No. 8:96-cv-04080-AW (D.Md. May 4, 2001) ("[T]here is no corresponding evidence indicating a common understanding for 'substantially reduced' or 'reduced' in the field of recombinant DNA technology . . . [therefore] the Court finds all the independent claims based upon either the 'substantially reduced' or 'reduced' RNas H activity limitation to be invalid for indefiniteness.")).[15]

As the Board correctly found, Tinnus misapprehends the case law providing that "[a]lthough terms of degree are [not] inherently indefinite, the patent must provide some standard for measuring that degree such that the claim language provide[s] enough certainty to one of skill in the art when read in the context of the invention." *GE Lighting Solutions, LLC v. Lights of America, Inc.,* 663 Fed.Appx. 938, 940 (Fed. Cir. 2016) (internal quotations omitted and citation omitted). "And

---

never argued that the patent claims were indefinite simply because they used the word "substantially."

[15] Tinnus' reliance on *Apple Inc. v. Samsung Elecs. Co.*, 786 F.3d 983 (Fed. Cir. 2015), *rev'd and remanded on other grounds*, 137 S.Ct. 429 (2016) is misplaced. In *Apple*, the claim term at issue was "substantially centered" with respect to a display screen. Unlike in this case, where a dispute exists with respect to the meaning of "filled," there was no dispute in *Apple* as to the "center" of a display screen.

so for the asserted claims to be definite, the patent must provide that additional information in the form of objective boundaries." *Id.*; *see also Interval*, 766 F.3d at 1370. In addition, as the Board properly acknowledged, "Tinnus' reliance on case law involving entirely separate patents and different technologies to define the term 'substantially' in claim 1 of the '066 Patent is misplaced." Appx.0040 (citing *Medrad, Inc. v. MRI Devices Corp.,* 401 F.3d 1313, 1318-19 (Fed. Cir. 2005) ("the manner in which the term is used in the patent may dictate a definition that differs from the definition that would be given to the same term in a different patent with a different specification or prosecution history.").

Here, the lack of objective boundaries for the claim term "substantially filled," which does not appear in the Specification, is fatal.[16] *See Interval,* 766 F.3d at 1371. Because no standard exists for measuring the precise boundaries of "substantially filled" in the intrinsic record, the Court should affirm the Board's Final Written Decision.

*** 

---

[16] Tinnus attempts to rely on Telebrands' expert's testimony in the related litigation in the hopes of defining the boundaries of "substantially filled." Br.48-49. But Telebrands' expert did not ascribe any objective limit to "substantially filled." Appx1234, ¶34. And the record of these proceedings does not include Dr. Kamrin's testimony in the litigation that the meaning of "substantially filled" is a "desired size and/or volume." Tinnus also attempts to rely on Telebrands' use of the term "filled" when describing the function of expandable containers in the prior art references. Br.49. Again, Telebrands did not ascribe any objective limit to "substantially filled."

Accordingly, for all the reasons stated above and in the Board's Final Written Decision, the Board properly determined the phrase "a connecting force not less than a weight of one of the containers when substantially filled with water" is indefinite, rendering all claims of the '066 patent indefinite. Therefore, the Court should affirm the Board's Final Written Decision holding that all claims of the '066 patent are indefinite and dismiss Tinnus' appeal.

### D. Tinnus Waived Its Right To Challenge The Constitutionality of The Board's Final Written Decision Because It Did Not Raise The Issue With The Board

Tinnus improperly raises its Constitutional challenge for the first time on appeal. Its challenge should be rejected as untimely. *In re DBC*, 545 F.3d 1373, 1277-81 (Fed. Cir. 2008); *see also In re Hill-Rom, Inc.* 634 Fed.Appx. 786, 792 (Fed. Cir. 2015) (holding the appellant waived its legal challenge to the Patent and Trademark Office regulation when it failed to raise the issue before the Board); *In re Baxter Intern, Inc.*, 678 F.3d 1357, 1362 (Fed. Cir. 2012) (holding the appellant waived its claim limitation argument by failing to timely present it to the Board and failing to present exceptional circumstances for the issue to be considered); *In re Watts*, 354 F.3d 1362, 1367-68 (Fed. Cir. 2004) (declining to hear a challenge to the Board's decision on its interpretation of the prior art because the challenge was not presented to the Board and the appellant failed to demonstrate exceptional circumstances to warrant consideration); *In re Schreiber*, 128 F.3d 1473, 1479 (Fed.

Cir. 1997) (declining to address the appellant's prior art challenge raised for the first time on appeal).  The circumstances of this case are insufficient to warrant exceptional consideration as there has been no intervening change in the law or facts, and the issue of constitutionality could have been raised before the Board.  *See DBC*, 545 F.3d at 1279-81. (finding that exceptional circumstances that warrant excusal of an untimely raised issue are: (1) intervening changes in law or facts, or (2) legal or factual propositions that were not knowable during the Board proceeding.)

Recognizing the significance of its failure to timely raise a constitutionality challenge, Tinnus improperly attempts to rely on *Beard v. General Services Administration*, 801 F.2d 1318 (Fed. Cir. 1986), for its contention that it may challenge constitutionality for the first time on appeal.  Br.51.  *Beard* was not a patent case, but involved review, under an abuse of discretion standard, of a Merit Systems Protection Board decision affirming removal of a protective services officer for violating rules concerning the use of mace.  The legal issue was not whether appellant waived his constitutional challenge by failing to raise it to the Board, but whether appellant's failure to raise the constitutional issue to the Board was a failure to exhaust administrative remedies.  *Beard*, 801 F.2d at 1321.  Second, subsequent to *Beard,* this Court held that an appellant in a patent case waived a constitutional challenge to a Board's decision by failing to raise the issue before the Board.  *See DBC*, 545 F.3d at 1277-81.  Here, there is no justification for the exceptional

measure of considering an issue that Tinnus failed to raise before the Board.[17]  For at least these reasons, the Court should not entertain Tinnus' new argument regarding constitutionality of the PGR proceedings.

In any event, even if Tinnus had preserved the issue, this Court has confirmed that the Patent Trial and Appeal Board's IPR proceedings[18] do not violate Article III or the Seventh Amendment, and are constitutional. *MCM Portfolio*, 812 F.3d at 1291-93.  Accordingly, this Court should dismiss Tinnus' constitutional challenge in its entirety.

### E.  If the Court Reverses the Board's Finding Of Indefiniteness, the Case Should Be Remanded To The Board For Further Proceedings

In this PGR proceeding, the Board instituted post-grant review on not only 35 U.S.C. § 112(b), but also 35 U.S.C. § 103.  Appx0749.  In its Final Written decision, the Board had no need to reach the obviousness grounds, because all claims were invalid as indefinite.  Appx0042.  If this Court hypothetically were to agree with Tinnus and reverse the Board's decision that all claims are invalid as indefinite,

---

[17] Tellingly, prior to the grant of *certiorari* by the Supreme Court in *Oil States Energy Servs., LLC v. Greene's Energy Group, LLC*, 2017 U.S. LEXIS 3727 (U.S. June 12, 2017), Tinnus raised this same issue before the Board in other post-grant proceedings, on March 7, 2017. *See Telebrands Corp. v. Tinnus Enterprises, LLC*, PGR2016-00031, Paper 41 at 84-88 (P.T.A.B. June 5, 2017); *Telebrands Corp. v. Tinnus Enterprises, LLC*, PGR2016-00030, Paper 40 at 81-85 (P.T.A.B. June 5, 2017).

[18] *See Credit Acceptance*, 859 F.3d at 1053 (applying "the reasoning and conclusions" of the previous IPR cases to PGR cases as well).

Telebrands respectfully requests that this case be remanded to the Board so that it can consider the obviousness grounds of institution, and issue a final written decision on those grounds.

## VII.  CONCLUSION

For all the foregoing reasons, Telebrands respectfully requests that the Court affirm the Board's Final Written Decision.

Respectfully submitted,

COOPER & DUNHAM LLP

Dated:  August 29, 2017          By:  /s/ Robert T. Maldonado
                                       Robert T. Maldonado
                                       Tonia A. Sayour
                                       Elana B. Araj
                                       Cooper & Dunham LLP
                                       30 Rockefeller Plaza
                                       New York, New York, 10112
                                       Tel.: (212) 278-0400
                                       Fax:  (212) 391-0525

                                       Eric J. Maurer
                                       Boies Schiller Flexner LLP
                                       1401 New York Ave, NW
                                       Washington, DC 20005
                                       Tel: (202) 274-1151
                                       Fax: (202) 372-5771

                                       Attorneys for Appellee
                                       Telebrands Corp.

### United States Court of Appeals
### for the Federal Circuit

*Tinnus Enterprises, LLC v. Telebrands Corporation, No. 17-1726*

## CERTIFICATE OF SERVICE

I, Melissa Picket, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by COOPER & DUNHAM LLP, Counsel for Appellee to print this document. I am an employee of Counsel Press.

On **August 29, 2017,** counsel has authorized me to electronically file the foregoing **Brief for Appellee** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including the following principal counsel for the other parties:

Thomas Mansfield Dunlap
Dunlap Bennett & Ludwig PLLC
211 Church Street, SE
Leesburg VA 20175
703-777-7319
tdunlap@dbllawyers.com
*Counsel for Appellant*

Nathan K. Kelley
United States Patent and
Trademark Office
PO Box 1450
Mail Stop 8
Alexandria VA 22313
nathan.kelley@uspto.gov
*Counsel for Intervenor*

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court within the time provided in the Court's rules.

August 29, 2017

/s/ Melissa Picket
Counsel Press

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

 X  The brief contains 12,649 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and by Federal Circuit Rule 32(b), or

 The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and by Federal Circuit Rule 32(b).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

 X   The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in a 14 point Times New Roman font or

___ The brief has been prepared in a monospaced typeface using _____ in a _____ font.

Date: August 29, 2017                    /s/ Robert T. Maldonado_____
                                         Robert T. Maldonado


                                         Attorney for Appellee
                                         Telebrands Corp.