2017-1726

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
_____

TINNUS ENTERPRISES, LLC,
*Appellant*

v.

TELEBRANDS CORPORATION,
*Appellee*

JOSEPH MATAL, PERFORMING THE FUNCTIONS & DUTIES OF THE
DIRECTOR OF THE U.S. PATENT AND TRADEMARK OFFICE,
*Intervenor*
_____

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in PGR2015-00018.
_____

**CORRECTED BRIEF FOR INTERVENOR – DIRECTOR OF THE
UNITED STATES PATENT AND TRADEMARK OFFICE**

NATHAN K. KELLEY
Solicitor

THOMAS W. KRAUSE
Deputy Solicitor

AMY J. NELSON
FARHEENA Y. RASHEED
Associate Solicitors

Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
(571) 272-9035

*Attorneys for the Director of the
United States Patent and Trademark Office*

September 6, 2017

## RELEVANT STATUTORY PROVISION

35 U.S.C. § 112   Specification

(b)  **Conclusion.**—The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

# TABLE OF CONTENTS

I.     Statement of the Issue ........................................................................ 1

II.    Statement of the Case ........................................................................ 3

       A.     The '066 Patent........................................ ................... ...... 3

       B.     The Board's Final Written Decision .................................. 6

III.   Summary of the argument .......................................................... 7

IV.    Argument ...................................................................................... 9

       A.     Standard of Review ......................................................... 9

       B.     The Board Properly Looks to *Packard* and Agency Guidance
              When Considering Claim Definiteness During Post-Grant
              Review.......................................................................... 10

              1.     During Examination, Where the USPTO Gives Claims the
                     Broadest Reasonable Interpretation and the Applicant Can
                     Amend the Claims, the *Packard* Approach Applies.............. 10

              2.     *Nautilus* Applies During District Court Litigation, Where
                     Claims Are Interpreted Under a Different Standard and the
                     Patentee Cannot Amend the Claims..................................... 13

              3.     During Post-Grant Review, Where Claims Are Given the
                     Broadest Reasonable Interpretation and the Patentee Can
                     Amend the Claims, *Packard* Applies .................................. 18

       C.     The Board's Indefiniteness Analysis Here and This Court's
              *Tinnus I* Decision ............................................................ 21

       D.     The Board's Decision to Institute Post-Grant Review is Final and
              Nonappealable .................................................................. 24

V.     CONCLUSION .......................................................................... 27

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Am. Acad. of Sci. Tech Ctr., In re,*
  367 F.3d 1359 (Fed. Cir. 2004) .......................................................................11

*Buszard, In re,*
  504 F.3d 1364 (Fed. Cir. 2007) .......................................................................12

*Carr, In re,*
  297 F. 542 (D.C. Cir. 1924) .............................................................................15

*Cuozzo Speed Techs., LLC v. Lee,*
  136 S. Ct. 2131 (2016) ............................................................................ *passim*

*Halliburton Energy Servs., Inc. v. M-I LLC,*
  514 F.3d 1244 (Fed. Cir. 2008) .......................................................................14

*Hyatt v. Dudas,*
  492 F.3d 1365 (Fed. Cir. 2007) .......................................................................10

*Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.,*
  554 F.3d 1010 (Fed. Cir. 2009) .........................................................................9

*Markman v. Westview Instruments, Inc.,*
  517 U.S. 370 (1996) ..........................................................................................10

*McAward, Ex Parte,* No. 2015-006416,
  2017 WL 3669566 (BPAI Aug. 25, 2017) (precedential) .......................... 11-12

*Miyazaki, Ex Parte,*
  89 USPQ2d 1207 (BPAI 2008) (precedential) .................................................12

*Morris, In re,*
  127 F.3d 1048 (Fed. Cir. 1997) ................................................................ 14, 15

*Nautilus, Inc. v. Biosig Instruments, Inc.,*
  134 S. Ct. 2120 (2014) ............................................................................ *passim*

*Oetiker, In re,* 977 F.2d 1443 (Fed. Cir. 1992) ................................................. 10-11

**Page(s)**

*Packard v. Lee,*
    135 S. Ct. 2310 (2015) ................................................................ 2, 16

*Packard, In re,*
    751 F.3d 1307 (Fed. Cir. 2014) ............................................... *passim*

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005) ...................................... 8, 11, 13, 18

*Prater, In re,*
    415 F.2d 1393 (CCPA 1969) ..................................................... 13, 15

*Princeton Vanguard, LLC v. Frito-Lay North Am., Inc.,*
    786 F.3d 960 (Fed. Cir. 2015) ...........................................................9

*Tinnus Enters., LLC v. Telebrands Corp.,*
    846 F.3d 1190 (Fed. Cir. 2017) ................................................. 22-23

*Watts, In re,*
    354 F.3d 1362 (Fed. Cir. 2004) .......................................................26

*Yamamoto, In re,*
    740 F.2d 1569 (Fed. Cir. 1984) .......................................................13

*Zletz, In re,*
    893 F.2d 319 (Fed. Cir. 1989) ................................................ *passim*

**Statutes**

35 U.S.C. § 112 ............................................................................ *passim*

35 U.S.C. § 251(d) ...........................................................................20

35 U.S.C. § 311(b) ...........................................................................20

35 U.S.C. § 311(c)(1) ................................................................. 19-20

35 U.S.C. § 314(d) ...........................................................................24

35 U.S.C. § 321(c) ...........................................................................20

35 U.S.C. § 324(a) ...........................................................................25

**Page(s)**

35 U.S.C. § 324(e) ...................................................................24

Leahy-Smith America Invents Act,
    Pub. L. No. 112-29, 125 Stat. 284 (2011)................................. 10, 20

**Regulations**

37 C.F.R. § 42.100(b) .............................................................13

37 C.F.R. § 42.200(b) .............................................................18

37 C.F.R. § 42.221 ............................................................. 18, 19

**Other Authorities**

H.R. Rep. No. 112-98, pt. 1 (2011) .......................................19

MPEP § 2173.02(I) (9th ed. Rev. 7, Nov. 2015) ......................... 11, 17

MPEP § 2173.05(e) (9th ed. Rev. 7, Nov. 2015)............................. 1, 11

## STATEMENT OF RELATED CASES

The Director is not aware of any other appeal from the Patent Trial and Appeal Board ("Board") of the United States Patent and Trademark Office in connection with the patent at issue in this case, U.S. Patent No. 9,051,066, that has previously been before this Court. The Director is aware of an appeal challenging a district court grant of a preliminary injunction in an infringement litigation involving the patent. *Tinnus Enters., LLC, v. Telebrands Corp.*, 846 F.3d 1190 (Fed. Cir. 2017) ("*Tinnus I*"). In that case, this Court found no clear error in the district court's determination that Telebrands failed to raise a substantial question that the term "substantially filled" is indefinite, under the standard enunciated in *Nautilus, Inc. v. Biosig Instruments, Inc.*, __U.S.__, 134 S. Ct. 2120 (2014).

The Director is unaware of any other case pending in this or any other court that will directly affect, or directly be affected by, the Court's decision in this appeal other than those already identified by Tinnus in its opening brief.

# I.    STATEMENT OF THE ISSUE

The USPTO intervened in this appeal for a limited purpose: to urge the Court to hold that the Board correctly looked to *In re Packard*, 751 F.3d 1307 (Fed. Cir. 2014), and agency guidance when it assessed indefiniteness during the underlying post-grant review.

In *Packard*, this Court endorsed the Board's application of the legal standard set forth in the USPTO's Manual of Patent Examining Procedure (MPEP) ("A claim is indefinite when it contains words or phrases whose meaning is unclear."), in affirming an examiner's indefiniteness rejection in an *ex parte* application. *Id*. at 1314; *see also* MANUAL OF PATENT EXAMINING PROCEDURE § 2173.05(e) (9th ed. Rev. 7, Nov. 2015) (citing *Packard* in explaining that the Office does not interpret claims when examining patent applications in the same manner as the courts). In so holding, this Court emphasized the important role that the USPTO plays in ensuring that patent claims are clear and unambiguous, and contrasted the procedural posture of an indefiniteness rejection before the USPTO with an indefiniteness challenge in district court. *Id*. at 1312-13.

One month after *Packard*, the Supreme Court decided *Nautilus, Inc. v. Biosig Instruments, Inc.*, an appeal from a district court invalidity determination, holding that a patent is invalid for indefiniteness if, read in light of the specification and prosecution history it "fail[s] to inform, with reasonable

certainty, those skilled in the art about the scope of the invention." 134 S. Ct. 2120, 2124 (2014). Thereafter, the Federal Circuit denied en banc rehearing and the Supreme Court denied certiorari in *Packard*. 751 F.3d 1307, *reh'g and reh'g en banc denied* (Sept. 3, 2014); *certiorari denied*, 135 S. Ct. 2310 (2015).

During post-grant review (which is only permitted within nine-months of issuance), just as during examination, the broadest reasonable interpretation (BRI) standard applies, there is an opportunity to amend the claims, and the USPTO plays an important role in ensuring that claims are clear and unambiguous. The *Packard* approach to indefiniteness demands at least as much, and sometimes more, clarity than the *Nautilus* standard. It is the appropriate legal standard to be applied in this context.

The USPTO therefore primarily addresses whether the Board acted properly when it applied the *Packard* standard to determine whether the claims at issue are indefinite.

The USPTO also addresses Tinnus's challenge to the Board's final and nonappealable decision to institute the underlying post-grant review.

## II.    STATEMENT OF THE CASE

This appeal arises from post-grant review of U.S. Patent No. 9,051,066, ("the '066 patent"), owned by Tinnus Enterprises, LLC ("Tinnus"). Appx45-56.[1] After Telebrands Corp. ("Telebrands") requested post-grant review, the Board instituted review of claims 1-6, 8, and 10-14 of the patent on grounds of indefiniteness and on a subset of those claims on two grounds of obviousness. Appx10. In its final written decision, the Board held that Telebrands had demonstrated by a preponderance of the evidence that all the instituted claims were unpatentable. Appx11. Given its finding on indefiniteness, the Board declined to reach Tinnus's obviousness challenges. Appx42. Tinnus appealed the Board's final written decision to this Court.

### A.    The '066 Patent

The '066 patent, entitled "System and Method for Filling Containers With Fluids," relates to an apparatus for simultaneously filling and fastening multiple inflatable containers, such as balloons, with a substance (*e.g.*, air, helium, water, or medicines). Appx45; Appx53 (col. 1, ll. 19-41; col. 2, ll.4-15).

---

[1] Citations to the Joint Appendix are denoted as "Appx__." Citations to Tinnus's Brief are denoted as "Br. at __."



FIG. 1

In the embodiment that appears to be claimed in claim 1, depicted in Figure 1 (reproduced above) (Appx47), the system (10) includes a housing (12) attached to a hose (14) at end A and to hollow tubes (16) at end B. Appx53 (col. 2, ll. 35-37). Containers, *e.g.,* balloons (18), are clamped to the tubes (16) using elastic fasteners (20) such as O-rings, which regulate fluid flow by opening, closing, or partially obstructing fluid passageways. *Id*. (col. 2, ll. 51-57).

4

As the balloons expand when they are filled with water, they are held in place on the tubes by the O-rings via a "connecting force" provided by those rings. Appx54 (col. 3, ll. 62-64). The specification defines that connecting force in terms of the weight of a "filled" balloon: "the connecting force holding filled container to its corresponding tube is not less than the weight of the filled container." Appx54 (col. 3, ll. 58-60). That relationship between the connecting force and the weight of a "filled" balloon is what causes the filled balloons to fall off the tube when the system is shaken. *I.e.*, the shaking adds additional force such that the weight of a filled balloon plus the force of the shake exceeds the connecting force, which is equal to at least the weight of the filled balloon alone. The balloon then falls off and the O-ring constricts to prevent the water from escaping the balloon until it bursts.

Representative claim 1 recites:

> 1.    An apparatus comprising:
> a housing comprising an opening at a first end, and a plurality of holes extending through a common face of the housing at a second end;
> a plurality of flexible hollow tubes, each hollow tube attached to the housing at a respective one of the holes at the second end of the housing;
> a plurality of containers, each container removably attached to a respective one of the hollow tubes; and
> a plurality of elastic fasteners, each elastic fastener clamping a respective one of the plurality of containers to a corresponding hollow tube, and each elastic fastener configured to provide *a connecting force that is not less than a weight of one of the containers when*

*substantially filled with water*, and to automatically seal its respective one of the plurality of containers upon detaching the container from its corresponding hollow tube, such that shaking the hollow tubes in a state in which the containers are substantially filled with water overcomes the connecting force and causes the containers to detach from the hollow tubes thereby causing the elastic fasteners to automatically seal the containers;

wherein the apparatus is configured to fill the containers substantially simultaneously with a fluid.

A55 (disputed limitation emphasized).

## B.   The Board's Final Written Decision

In its final written decision, the Board found that Telebrands had demonstrated by a preponderance of the evidence that Claims 1-6, 8, and 10-14 are unpatentable. Specifically, the Board focused on the term "a connecting force that is not less than a weight of one of the containers when substantially filled with water" as set forth in claim 1, and ultimately found that phrase indefinite under 35 U.S.C. § 112(b). Appx18-42.

In so holding, the Board applied the indefiniteness standard approved by this Court in *Packard*, *i.e.*, "'a claim is indefinite when it contains words or phrases whose meaning is unclear.'" Appx24 (citing 751 F.3d at 1314). The Board explained that the Supreme Court's decision in *Nautilus* does not mandate the indefiniteness standard to be applied during patent examination or in AIA proceedings, where claims are given the BRI and the patent applicant/owner can seek to amend the claims to improve their clarity. Appx25. The Board concluded

6

that the standard applied in patent examination, approved in *Packard*, should likewise be applied during post-grant review where the BRI standard is applied and the opportunity to amend claims is afforded. Appx26 (citing *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2144-45 (2016)). According to the Board, "this approach serves to ensure precision in patent claims, thereby helping the public to understand the limits of the claims and keeping the rights afforded by patents within their legitimate scope." *Id*. In sum, the Board concluded that the reasons identified by the Supreme Court in *Cuozzo* for use of the BRI standard, particularly the opportunity to amend the claims, supported application of the *Packard* approach to indefiniteness in this AIA proceeding. *Id*.

## III.    SUMMARY OF THE ARGUMENT

In *Packard*, this Court confirmed that the USPTO properly rejects claims as failing to comply with the definiteness requirement of § 112(b) when they are unclear. That approach to indefiniteness, provided in agency guidance to examiners and the public, ensures that claims of issued patents are as clear as possible. District courts follow a different approach when making invalidity determinations, one that permits more ambiguity. Under the Supreme Court's *Nautilus* decision, a district court reviews claims under § 112(b) to confirm that they inform others of their scope with reasonable certainty. That reasonable certainty standard permits some ambiguity, and includes even those ambiguities

7

that could be avoided by the claim drafter. The USPTO's approach approved by this Court in *Packard*, however, endeavors to eliminate ambiguity wherever possible. Thus, for example, a claim that is reasonably amenable to two different constructions would be rejected as indefinite during prosecution under the *Packard* approach even if a skilled artisan could be reasonably certain which of the constructions was intended. Ideally, the relevant public should be able to read a patent claim and know what they are excluded from without having to resolve any ambiguity.

When it comes to post-grant review, which sits somewhere between prosecution and a district court action, the USPTO properly applies the less-forgiving *Packard* approach to definiteness. The reason for that approach flows naturally from the differences between post-grant review and district court actions. During a post-grant review, the BRI standard is used and otherwise patentable claims may be amended to clarify their meaning. In district courts by contrast, claims are interpreted under the *Phillips* standard and amendments are not available. Moreover, Congress's intent that post-grant review, which is permissible only during a short window after a patent issues, serve as a quality enhancement check on issued claims is another reason why demanding as much clarity as possible makes sense. In short, the Board properly looked to *Packard*

and agency guidance when assessing the indefiniteness issue in the underlying post-grant review.

Finally, while Tinnus has also raised the issue of whether the post-grant review was properly instituted here, that question is final and nonappealable per statute. The particular challenge Tinnus raises about the institution decision here, whether the merits standard for institution was met by the petitioner, is squarely within the types of issues the Supreme Court in *Cuozzo* confirmed are not appealable. Were it appealable, Tinnus's challenge would fail for two reasons: the Board applied the correct standard, and even if it did not, any failure to do so was harmless in this case.

## IV.    ARGUMENT

### A.    Standard of Review

"Indefiniteness, as a subset of claim construction, is a question of law which this court reviews without deference." *In re Packard*, 751 F.3d 1307, 1311 (Fed. Cir. 2014) (citing *Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*, 554 F.3d 1010, 1022 (Fed. Cir. 2009)). Whether the Board applied the correct legal standard is also reviewed de novo. *Princeton Vanguard, LLC v. Frito-Lay North Am., Inc.*, 786 F.3d 960, 964 (Fed. Cir. 2015).

## B.   The Board Properly Looks to *Packard* and Agency Guidance When Considering Claim Definiteness During Post-Grant Review

Under 35 U.S.C. § 112(b) or pre-AIA 35 U.S.C. § 112, second paragraph,[2]

the specification must conclude with "one or more claims particularly pointing

out and distinctly claiming the subject matter" regarded as the invention. This

definiteness requirement "secure[s] to the patentee all to which he is entitled" and

"apprise[s] the public of what is still open to them." *Markman v. Westview

Instruments, Inc.*, 517 U.S. 370, 373 (1996) (internal quotation marks omitted).

### 1.   During Examination, Where the USPTO Gives Claims the Broadest Reasonable Interpretation and the Applicant Can Amend the Claims, the *Packard* Approach Applies

The USPTO bears responsibility for testing claims for definiteness prior to

issuance. *See, e.g.*, *In re Zletz*, 893 F.2d 319, 321–22 (Fed. Cir. 1989). Thus,

when applying § 112 during examination of a patent application, the Office must

carry an initial procedural burden of presenting a prima facie case that a pending

claim is indefinite. *Hyatt v. Dudas*, 492 F.3d 1365, 1369–70 (Fed. Cir. 2007) ("In

the prosecution of a patent, the initial burden falls on the [Office] to set forth the

basis for any rejection, *i.e.*, a prima facie case."); *In re Oetiker*, 977 F.2d 1443,

---

[2] Appellant filed the patent on appeal after September 16, 2012, and thus, the Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011), version of § 112 applies. *See* 35 U.S.C. § 112(b) (2012); AIA, 125 Stat. at 297.

1445 (Fed. Cir. 1992) ("[T]he examiner bears the initial burden, on review of the prior art or on any other ground, of presenting a *prima facie* case of unpatentability.").

As the first step in its definiteness analysis, the Office considers the scope of the claims. *See Zletz*, 893 F.2d at 321 (discussing generally claim interpretation during patent examination). The Office "determines the scope of claims . . . not solely on the basis of the claim language, but upon giving claims their broadest reasonable construction 'in light of the specification as it would be interpreted by one of ordinary skill in the art.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc) (quoting *In re Am. Acad. of Sci. Tech Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004)); *see also Zletz*, 893 F.2d at 321. Applying the BRI standard to a claim, then, the Office establishes a prima facie case of indefiniteness, by setting forth a rejection explaining how the metes and bounds of a pending claim are ill-defined because the claim contains words or phrases whose meaning is unclear. *See In re Packard*, 751 F.3d at 1310 (citing MPEP § 2173.05(e)); *see also* MPEP § 2173.02(I) (9th ed. Rev. 7, Nov. 2015) (advising examiners that a rejection for indefiniteness is appropriate "after applying the broadest reasonable interpretation to the claim, if the metes and bounds of the claimed invention are not clear"); *Ex parte McAward*, No. 2015-006416, 2017 WL 3669566 (BPAI Aug. 25, 2017) (precedential) (applying the approach

11

approved in *Packard* in assessing indefiniteness during examination); *Ex Parte Miyazaki*, 89 USPQ2d 1207, 1211 (BPAI 2008) (precedential) ("if a claim is amenable to two or more plausible claim constructions, the USPTO is justified in requiring the applicant to more precisely define the metes and bounds of the claimed invention by holding the claim unpatentable . . . as indefinite"). During prosecution, an examiner's indefiniteness rejection begins what is intended to be an interactive process in which the applicant has the opportunity to respond to the examiner by amending the claims or by providing evidence or explanation that shows why the claims are not indefinite. *Packard*, 751 F.3d at 1311–12.

The Office plays an important role in ensuring that proposed patent claims are clear, unambiguous, and drafted as precisely as the art allows. Claim clarity keeps the rights conferred by a patent commensurate with the invention's contribution to the art. *Packard*, 751 F.3d at 1313 (explaining that the claim language must be as precise as the subject matter reasonably permits). Interpreting the claims as broadly as reasonable during prosecution allows the Office to fulfill this important role. *See In re Buszard*, 504 F.3d 1364, 1366 (Fed. Cir. 2007) (claims are given their broadest reasonable interpretation during prosecution "to facilitate sharpening and clarifying the claims at the application stage"); *Zletz*, 893 F.2d at 321 ("during patent prosecution when claims can be amended, ambiguities should be recognized, scope and breadth of language

12

explored, and clarification imposed"). And, in situations where the application of the broadest reasonable interpretation reveals ambiguity in the claim language, "the applicant may 'amend his claims to obtain protection commensurate with his actual contribution to the art.'" *In re Yamamoto*, 740 F.2d 1569, 1571 (Fed. Cir. 1984) (quoting *In re Prater*, 415 F.2d 1393, 1404-05 (CCPA 1969)). Thus, the BRI standard ensures that claims, once fixed and issued, are as "precise, clear, correct, and unambiguous" as possible. *Zletz*, 893 F.2d at 322.

### 2. *Nautilus* Applies During District Court Litigation, Where Claims Are Interpreted Under a Different Standard and the Patentee Cannot Amend the Claims

Claim definiteness is intertwined with claim construction, and the broadest-reasonable-interpretation (BRI) standard used by the USPTO differs from the *Phillips* claim construction standard used during patent litigation in the federal courts. The Supreme Court has recognized "a degree of inconsistency in the standards used between the courts and the agency" in claim interpretation. *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. __, 136 S. Ct. 2131, 2146 (2016) (holding that the BRI standard set forth in 37 C.F.R. § 42.100(b) represents a reasonable exercise of the rulemaking authority that Congress delegated to the Office). But, importantly, the Court approved of the distinction, explaining that "construing a patent claim according to its broadest reasonable construction helps to protect the public" because it "helps ensure precision while avoiding overly broad claims,

13

and thereby helps prevent a patent from tying up too much knowledge, while helping members of the public draw useful information from the disclosed invention and better understand the lawful limits of the claim." *Id.* at 2144–45; *see also In re Morris*, 127 F.3d 1048, 1054 (Fed. Cir. 1997) ("It would be inconsistent with the role assigned to the PTO in issuing a patent to require it to interpret claims in the same manner as judges who, post-issuance, operate under the assumption the patent is valid."). As this Court explained in *Halliburton Energy Servs., Inc. v. M-I LLC* in the context of claim clarity,

> the patent drafter is in the best position to resolve the ambiguity in the patent claims, and it is highly desirable that patent examiners demand that applicants do so in appropriate circumstances so that the patent can be amended during prosecution rather than attempting to resolve the ambiguity in litigation.

514 F.3d 1244, 1255 (Fed. Cir. 2008) (cited with approval in *Nautilus*, 134 S. Ct. at 2129).

After the *Packard* decision, the Supreme Court in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. __, 134 S. Ct. 2120, 2129 (2014), explained that the "definiteness command" of § 112, ¶ 2 "require[s] that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." The Court stated that "[t]he definiteness requirement, so understood, mandates clarity, while

14

recognizing that absolute precision is unattainable." *Id. Nautilus*, however, did not mandate a change in the Office's approach to indefiniteness in patent-examination matters in which, as discussed above, the claims are interpreted under the BRI standard and an opportunity to amend the claims is afforded (i.e., at a time when the examiner and the applicant are working to reach a mutual understanding of the scope and content of the claims). *See Packard*, 751 F.3d at 1323–24 (Plager, J., concurring) (recognizing and approving the reasons enumerated by the Office regarding why the Office's review of pending claims for indefiniteness uses "a lower threshold for ambiguity than a court's"). Indeed, this Court denied rehearing en banc in *Packard* following the *Nautilus* decision. 751 F.3d 1307, *reh'g en banc denied* (Sept. 3, 2014).

The United States participated as amicus curiae in *Nautilus* and defended the Office's approach to definiteness. *See* Br. for the United States as Amicus Curiae Supporting Respondent, *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014) (No. 13-369), 2014 WL 1319151 at *21. Specifically, the government explained that "[f]or nearly a century, the courts have recognized that the PTO . . . may appropriately insist on a greater degree of clarity than would the court in an infringement suit." *Id.* at *21-22 (citing *Morris*, 127 F.3d at 1054; *Zletz*, 893 F.2d at 321; *Prater*, 415 F.2d at 1404–05; *In re Carr,* 297 F. 542, 543–44 (D.C. Cir. 1924)). Accordingly, the government argued, the Office is "justified

15

in using a lower threshold for indefiniteness." *Id.* at *22. In its decision, the Supreme Court did not specifically address the government's argument.

Following *Nautilus*, the government reaffirmed that view in a brief opposing a writ of *certiorari* in *Packard v. Lee*. *See* Br. for the Respondent in Opposition, *Packard v. Lee*, 135 S. Ct. 2310 (2015) (No. 14-655), 2015 WL 1642022. The United States emphasized that the Court's reasoning about "'infringement actions' (i.e., proceedings implicating *issued* patents) demonstrates that [the Court] was not addressing the pre-issuance examination context, which was not at issue in *Nautilus* itself." *Id.* at *21. Thus, the government explained, "[t]here is no basis" for the contention that "the Court in *Nautilus* rejected the PTO's long-standing practice." *Id.* Indeed, it would be "implausible," the government argued, that the Court "intended to overturn the PTO's longstanding practice without even addressing the government's contention that the Court should be particularly loath to disturb the settled distinction that the PTO and the courts have recognized between the pre- and post-issuance contexts, which long predates the 1952 enactment of the Patent Act." *Id.* at *22 (internal quotation omitted). The Supreme Court denied certiorari. *Packard v. Lee*, 135 S. Ct. 2310 (2015).

Thus, the USPTO continues to apply the approach for assessing indefiniteness approved by this Court in *Packard*, i.e., "[a] claim is indefinite

when it contains words or phrases whose meaning is unclear." 751 F.3d at 1310,

1314. Put differently, "claims are required to be cast in clear—as opposed to

ambiguous, vague, indefinite—terms." *Id.* at 1313; *see also* MPEP § 2173.02(I).

> [W]hen the USPTO has initially issued a well-grounded rejection that
> identifies ways in which language in a claim is ambiguous, vague,
> incoherent, opaque, or otherwise unclear in describing and defining the
> claimed invention, and thereafter the applicant fails to provide a
> satisfactory response, the USPTO can properly reject the claim as
> failing to meet the statutory requirements of § 112(b).

*Packard*, 751 F.2d at 1311; *see also Zletz*, 893 F.2d at 322 ("the inquiry during

examination is patentability of the invention as 'the applicant regards' it; and if

the claims do not 'particularly point[ ] out and distinctly claim[ ],' in the words of

section 112, that which examination shows the applicant is entitled to claim as his

invention, the appropriate PTO action is to reject the claims for that reason")

(alterations in original) (footnote omitted). However, "this requirement is not a

demand for unreasonable precision," and "does not contemplate in every case a

verbal precision of the kind found in mathematics." *Packard*, 751 F.3d at 1313.

Instead, the requirement that claims be written in clear and unambiguous terms

"necessarily invokes some standard of reasonable precision in the use of language

in the context of the circumstances." *Id.*

17

**3.    During Post-Grant Review, Where Claims Are Given the Broadest Reasonable Interpretation and the Patentee Can Amend the Claims, *Packard* Applies**

With those two different approaches established, one for examination and the other for district court actions, the question is which approach should be used during a post-grant review under the AIA. Post-grant review obviously shares similarities and differences with both examination and district court actions. But, during post-grant review, like examination, claims are given their broadest reasonable interpretation in light of the specification. 37 C.F.R. § 42.200(b); *see Cuozzo*, 136 S. Ct. at 2144-46. And claims can also be amended during post-grant review. 37 C.F.R. § 42.221; *see Cuozzo*, 136 S. Ct. at 2144-46. Given that the basis for the *Packard*/USPTO guidelines approach is rooted in the BRI claim construction standard and the possibility of amendment, the Director maintains that the Board was correct to use the *Packard* approach here in a post-grant review.

One difference between BRI and the approach used by district courts construing claims under *Phillips* is that the latter approach sometimes permits constructions aimed at preserving validity. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1327 (Fed. Cir. 2005) (en banc) (recognizing the maxim that claims should be construed to preserve their validity while stating that maxim is not applied broadly). Validity preservation is not a component of BRI. Indeed, the

presumption of validity does not apply during post-grant proceedings under the AIA. Another distinction from district court actions is that in a post-grant review, the patentee also has the opportunity to amend the claims. 37 C.F.R. § 42.221. Accordingly, the same justifications for application of the *Packard* standard of indefiniteness during examination are present during post-grant review.

While post-grant review is a hybrid between reexamination and district court litigation, the existence of the BRI claim construction standard and the ability of the patentee to amend the claims provide sufficient basis for applying the less-forgiving *Packard* approach to definiteness. Following that approach, which may require more clarity than under the Supreme Court's *Nautilus* "reasonable certainty" benchmark, is consistent with Congress's intent in the AIA to provide "a meaningful opportunity to improve patent quality and restore confidence in the presumption of validity that comes with issued patents in court." H.R. Rep. No. 112-98, pt. 1, at 48 (2011).

That quality-enhancement goal is even more pronounced in the context of post-grant reviews than in inter partes reviews, which have much more frequently been the subject of appeals before this Court. Unlike inter partes reviews, which can be brought throughout the life of a patent, a post-grant review petition can only be filed in the first nine months after a patent is issued. *Compare* 35 U.S.C.

§ 311(c)(1) (providing that a petition for an inter partes review cannot be filed until nine months after a patent is granted, without further limitation on timing) *with* 35 U.S.C. § 321(c) (providing that a petition for a post-grant review can only be filed in the first nine months after the grant of the patent). Furthermore, indefiniteness of a patented claim cannot be raised at all in an inter partes review. 35 U.S.C. § 311(b) (cabining the scope of inter partes review to grounds "that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications"). Thus, the *Packard* approach followed by the Board here is only applicable to post-grant reviews and would have no application against a patented claim subject to an inter partes review.[3] Because a post-grant review occurs so close in time to examination, and at a time when even a broadening correction of the patent is still available through reissue, 35 U.S.C. § 251(d), following the stricter approach to policing indefiniteness used during examination ensures that the quality of patented claims is as clear as language permits, while also affording patentees an opportunity early in the life of their patent to correct ambiguities.

---

[3] In an uncodified portion of the AIA, Congress also created a special "transitional post-grant review proceeding for review of the validity of covered business method patents." AIA § 18. Because the CBM procedure is a form of post-grant review, as opposed to inter partes review, § 112 issues may be raised in a CBM review as well.

**C.    The Board's Indefiniteness Analysis Here and This Court's *Tinnus I* Decision**

The Director intervened in this appeal primarily to address the proper approach to indefiniteness in a post-grant review, discussed above, and also to address the issues raised by Tinnus related to the institution decision, discussed below. The Director thus leaves it to the parties and this Court to resolve the particular indefiniteness dispute in this case. However, given this Court's previous decision in the related *Tinnus* appeal from the district court's preliminary injunction decision and Tinnus's discussion of that decision, the Director adds the following brief discussion simply to highlight some issues that Tinnus appears to have glossed over in its brief.

As for the indefinite limitation, it is not just the "substantially filled" language that is at issue here, but instead the entire term that links the claimed connecting force provided by the fastener to the weight of a balloon substantially filled with water: "a connecting force that is not less than a weight of one of the containers when substantially filled with water." Appx14. Tinnus focuses heavily on the relationship between a substantially filled balloon and the ability to shake the balloon off the tube. Br. at 37-38. The problem with Tinnus's argument is that the "shaking" itself adds some additional amount of unspecified force. The harder one shakes, the more force is added to the weight of the balloon to overcome the

21

connecting force. Thus, the argument that a balloon that can be shaken off a tube is necessarily a substantially full balloon is circular and ignores the full limitation at issue. The connecting force limitation is not functional; as recited, the force is not less than the weight of a substantially full balloon. Under Tinnus's logic, if a partially full balloon could be shaken hard enough to overcome the connecting force and detach, it would thereby become a substantially full balloon. The correct approach to indefiniteness used by the agency should demand more clarity from a claim limitation directed to the presence of a particular connecting force measured in weight.[4]

Tinnus also relies heavily on this Court's earlier decision about this patent. *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190 (Fed. Cir. 2017) (*Tinnus*

---

[4] Tinnus could likely have written an alternate and acceptable functional limitation. That appears to be what was done in another Tinnus patent, U.S. Patent No. 9,242,749, filed May 28, 2015 as a continuation of the '066 patent. Claim 1 of the '749 patent includes the limitation, "the restriction of each elastic fastener being sufficiently limited to permit its respective container to detach from its respective tube upon one or more of (1) at least partially filling the container with a fluid and (2) shaking the housing." '749 patent, claim 1, *available at* http://www.google.com/patents/US9242749. In a recent post-grant review institution decision related to the '749 patent, the Board concluded that the petitioner had *not* demonstrated that it was more likely than not to prevail in its theory that this differently-worded limitation was indefinite under the *Packard* approach. *Telebrands Corp. v. Tinnus Enters., LLC*, PGR2016-00030, Paper 16 at 15 (PTAB Feb. 21, 2017), *available at* https://ptab.uspto.gov/#/login (logging in is unnecessary to search for a public document).

*I*). *Tinnus I* addressed the question of whether the district court's indefiniteness determination at the preliminary injunction stage amounted to plain error. *Tinnus I*, 846 F.3d at 1205. Significantly, this Court's decision appears to have focused purely on the term "substantially filled" without an analysis of the larger phrase considered by the Board here. Obviously this Court was reviewing that appeal on the record developed at the preliminary injunction phase of the district court action and does not compel a particular decision here.

Finally, Tinnus puts significant weight on this Court's statement in *Tinnus I* that, "[t]he specification . . . does not define or equate 'substantially filled' with 'desired size.'" *Tinnus I*, 846 F.3d at 1206; Br. at 35-36. According to Tinnus, the Board's basis here is identical to Telebrands' argument in *Tinnus I* and so must fail. Br. at 35. Tinnus is mistaken—the Board's basis is not so limited. The Board did not point to a definition in the specification for "substantially filled" that was subjective and then move on. Instead, the Board considered the entire specification and its various uses of the term "filled" or "substantially filled." Appx30. It also considered Tinnus's references to the prosecution history and the Examiner's Notice of Allowability. Appx30. The Board additionally considered the testimony of Tinnus's expert, Dr. Kudrowitz. Appx30. And it looked to additional language in dependent claim 6. Appx. 31. Even after that analysis, the Board spent several more pages discussing the basis for its indefiniteness holding

23

beyond the conclusion that whether a balloon is full is subjective in light of the specification. Appx33-41. In short, this Court's earlier decision does not foreclose affirmance of the Board here.

## D.    The Board's Decision to Institute Post-Grant Review is Final and Nonappealable

Tinnus alternatively argues that the Board applied the wrong standard in granting the underlying post-grant review. Br. at 19-23. That argument fails for at least three reasons: (1) it is not an appealable issue; (2) the correct standard was identified; and (3) any error, even if appealable and actually made, was harmless.

First, and most importantly, 35 U.S.C. § 324(e) provides that the decision whether to institute a post-grant review is "final and nonappealable." The Supreme Court has interpreted those words in the context of § 314(d) to mean what they say, particularly where the challenge is to the determination that a petitioner has met the threshold showing for institution. *Cuozzo*, 136 S. Ct. at 2142 ("[W]here a patent holder merely challenges the Patent Office's determination that the information presented in the petition shows that there is a reasonable likelihood of success . . . , § 314(d) bars judicial review.") (internal quotes and alterations omitted). It is true that the Supreme Court was reviewing § 314(d), which applies to inter partes review, and not section § 324(e), which applies to post-grant reviews. But given that the critical language in the two

sections is *identical*, there can be no doubt that the Court's analysis applies equally to both provisions. Tellingly, although Tinnus cites *Cuozzo* in various places in its opening brief, it does not address that dispositive decision a single time in its argument about institution.

Second, the institution decision expressly states, "[W]e determine that the information presented in the Petition demonstrates that it is more likely than not that Petitioner would prevail in showing that the challenged claims, except claims 7 and 9, are unpatentable." Appx724. That language matches the "more likely than not" standard articulated in § 324(a), and demonstrates that the Board understood the standard applicable to post-grant reviews. The Director acknowledges that the Board also used the phrase "reasonable likelihood" in its decision when discussing the indefiniteness issue. Appx736. Given that this is one of the earliest post-grant review institution decisions issued by the Board—written after having decided thousands of inter partes review petitions—it is more likely that the use of terminology from the inter-partes review context was inadvertent. Finally, on the actual issue of indefiniteness, the Board explained, "we are persuaded at this stage of the proceeding that the [disputed claim language] is indefinite." Appx733. That conclusion, that the disputed language "is indefinite," comfortably meets the more-likely-than-not standard. Thus, aside

from being a nonappealable issue, Tinnus is wrong in its argument that the Board did not institute the underlying post-grant review under the correct standard.

Third, any mistake, even if made and appealable, is harmless. The Board concluded in its final written decision that the claims are indefinite. Appx42. In light of that conclusion, and Tinnus's appeal on the merits of that conclusion, any error in the threshold determination of indefiniteness was harmless. "[T]o prevail[,] the appellant must not only show the existence of error, but also show that the error was in fact harmful because it affected the decision below." *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004) (applying the harmless error doctrine in the context of a USPTO Board decision). Given the ultimate decision by the Board in this post-grant review, it is hard to imagine how the error alleged by Tinnus was harmful to that outcome.

# V.    CONCLUSION

The Board correctly decided to apply the *Packard* standard for definiteness in this post-grant review where, just like during examination, claims are given the broadest reasonable interpretation and the patentee has the opportunity to amend the claims.

Respectfully submitted,

September 6, 2017

 /s/ Nathan K. Kelley
_____
NATHAN K. KELLEY
Solicitor

THOMAS W. KRAUSE
Deputy Solicitor

AMY J. NELSON
FARHEENA Y. RASHEED
Associate Solicitors

U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313

*Attorneys for the Director of the*
*United States Patent and Trademark Office*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2017, the foregoing CORRECTED

BRIEF FOR INTERVENOR—DIRECTOR OF THE UNITED STATES

PATENT AND TRADEMARK OFFICE was electronically filed using the

Court's CM/ECF filing system, which constitutes service, pursuant to Fed. Cir. R.

25(e)(1), to all registered CM/ECF users.


/s/ Nathan K. Kelley
NATHAN K. KELLEY
Solicitor
U.S. Patent and Trademark Office